**[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 649.]**

OFFICE OF DISCIPLINARY COUNSEL *v.* FERRERI.

[Cite as *Disciplinary Counsel v. Ferreri*, 1999-Ohio-330.]

*Judges—Misconduct—Eighteen-month suspension from practice of law with final twelve months stayed—Suspension without pay from position as judge of the Cuyahoga County Court of Common Pleas, Juvenile Division, for six months—Making statements to the media on three separate occasions in violation of the judicial canons and the Disciplinary Rules.*

(No. 98-2636—Submitted February 24, 1999—Decided June 9, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-46.

_____

{¶ 1} On September 2, 1997, relator, Office of Disciplinary Counsel, filed an amended complaint charging that respondent, Judge Robert A. Ferreri of the Cuyahoga County Court of Common Pleas, Juvenile Division, Attorney Registration No. 0000860, made statements to the media on three separate occasions in violation of the Code of Judicial Conduct and the Disciplinary Rules. In his answer, respondent admitted many of the alleged facts but claimed that his statements either were taken out of context or did not violate the judicial canons or the Disciplinary Rules.

{¶ 2} The matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"), which received stipulations of the parties, videotapes of interviews with the respondent, articles published in various newspapers, and two days of testimony from reporters, respondent, and other witnesses. Both parties fully briefed the issues involved.

{¶ 3} As to count one of the amended complaint, the panel found that in November 1996, respondent granted an interview to a television news reporter after

the Eighth District Court of Appeals reversed and remanded a custody decision rendered by respondent in *In re Hitchcock* (1996), 120 Ohio App.3d 88, 696 N.E.2d 1090 ("Hitchcock"). In the interview, which was taped at respondent's home, respondent made several false statements about certain of the Hitchcock parties, including an erroneous accusation that one of them had filed for bankruptcy, and "stuck people—thousand dollars [*sic*] for court reporters fees." In the same interview respondent stated that the court of appeals' decision was "purely political," and that the court of appeals' decision was both made and written by a law clerk who "made a value judgment that was based in error and on law that doesn't exist." Without any personal knowledge of the activity at the court of appeals, respondent told the television interviewer that "volumes of data [were sent] to the court of appeals which obviously went unread." In the same interview respondent falsely stated that the judges of the court of appeals were influenced by the wife of one of the appellants' attorneys and that the attorney's wife was also a clerk to one of the judges on that court.

{¶ 4} The panel found that although the interview tape ultimately broadcast on a local television station did not contain these false and derogatory remarks, and although respondent considered his remarks which were not broadcast to be "off the record," respondent intended by his remarks to influence the reporter and thereby influence public opinion regarding the case. The panel further found that by making these statements, whether on or off the record, respondent acted without due regard for the impression he left as to the character and reputation of the party against whom he had ruled, the integrity of the court of appeals, the fairness and objectivity of the judicial system, and his own impartiality and judicial temperament.

{¶ 5} The panel concluded that respondent's conduct during the taped interview violated Canon 2 of the Code of Judicial Conduct (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public

2

confidence in the integrity and impartiality of the judiciary), Canon 3(B)(9) (a judge shall abstain from public comment about a pending or impending proceeding that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing), and Canon 4 (a judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities). The panel further concluded that as a lawyer, respondent violated Gov.Bar R. IV(2) and Gov.Jud. R. I(2), both of which provide that it is the duty of a lawyer to maintain a respectful attitude toward the courts.

**{¶ 6}** The panel found that the facts on which count two of the amended complaint were based also occurred in November 1996. Three days after two youths were, on November 10, 1996, separated for fighting in the Cuyahoga County Juvenile Detention Center, a social worker informed respondent of the incident. The social worker also told respondent that after the fight, one of the youths was taken to St. Vincent's Charity Hospital for treatment and that the juvenile claimed that he was beaten by detention center staff members. The next day, November 14, 1996, respondent, accompanied by the head of the juvenile prosecutor's office, interviewed the juvenile. Respondent was unaware that the Court Administrator's Office was investigating the matter. The social worker who first informed respondent of the incident then wrote a second letter, and that letter referred not only to the fight but also to the juvenile's injuries and his allegation that they were a result of his being beaten by a staff member.

**{¶ 7}** The investigation by the court administrator resulted in the termination and resignation of two staff members who were alleged to have beaten the youth.

**{¶ 8}** A week after his own investigation, respondent gave an interview to the Cleveland edition of The Call and Post newspaper, in which he stated that detention center staff members routinely beat inmates and that subsequent coverups

of the beatings by a conspiracy of the court's public relations officer and the administration were also routine. The article attributed to respondent, without a direct quote, stated that problems exist at the detention center because of a lack of leadership by the Administrative Judge of the Juvenile Court, Judge Peter Sikora, and detention center director Tom Foster. The respondent characterized the juvenile court as being "out of control." Respondent, however, had not discussed the incident with the court administrator, the administrative judge, the director of community services, or the detention center's public relations officer, all of whom denied any conspiracy.

{¶ 9} The panel found not only that respondent made these statements without determining whether the court administrator was investigating the incident, but that there was no "coverup" as respondent alleged. The panel further found that respondent unjustifiably criticized the administrative judge and the court administrator without confirming the accuracy of his remarks.

{¶ 10} The panel concluded that respondent's statements with respect to the juvenile detention center violated Canon 2 of the Code of Judicial Conduct, Canon 3(C)(1) (a judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of the court's business), Gov.Bar R. IV(2) and Gov.Jud. R. I(2), and DR 8-102(B) (a lawyer shall not knowingly make false accusations against a judge).

{¶ 11} Count three of the amended complaint involved respondent's statements in an August 1995 Cleveland Free Times article about Camp Roulston, a juvenile detention facility operated as a "boot camp." The panel found that respondent was quoted in a Cleveland Free Times article as describing the Administrative Judge of the Cuyahoga County Court of Common Pleas, Juvenile Division, and the court's Director of Community Services and Probation as "the

4

two most entrenched and incompetent bureaucrats at the courthouse." The article also quoted respondent as accusing the administrative judge and the director of community services of "lying to officials of the federal government about the success rate of the boot camp and how successful the programming was." However, respondent claimed that these comments related to the director of community services and the court administrator and not to the administrative judge. The director of community services denied that she had attempted to mislead federal authorities, and the author of the newspaper article testified that he read the article to the respondent before it was published and respondent approved the contents of the article as it appeared.

{¶ 12} The panel found that while it could not find clear and convincing evidence that respondent's comments related to the administrative judge, the comments nevertheless were false and reflected adversely upon the administration of the court under the judge's direction and upon persons appointed by him or under his supervision. The panel therefore concluded that respondent's comments violated Canon 2 of the Code of Judicial Conduct, Gov.Bar R. IV(2), and Gov.Jud.R. I(2).

{¶ 13} After reviewing the evidence submitted in mitigation, the panel found some connection between respondent's conduct and his laudable concern to protect children and youths from being harmed by the system. Nevertheless, after hearing the testimony of the newspaper reporters and viewing the videotape, the panel did not believe that respondent's statements were made "off the record" and not intended for broadcast. The panel recommended that respondent be suspended from the practice of law for eighteen months; that the entire suspension be stayed in favor of probation under the monitoring of a judge; and that, as a condition of probation, respondent commit no further violations of the judicial canons, Disciplinary Rules, or administrative rules. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Lori J. Brown*, First Assistant Disciplinary Counsel, for relator.

*H. Ritchey Hollenbaugh,* for respondent.

———————————

*Per Curiam.*

{¶ 14} We adopt the findings and conclusions of the board.  Canon 2 of the Code of Judicial Conduct requires that a judge respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.  Shortly after one of his decisions was reversed, respondent invited a television reporter into his home and gave an interview in which he maligned the court of appeals, saying that its ruling was "political," that it was made and written by a law clerk, that the appellate court was influenced by the wife of one of the appellant's attorneys, and that the appellate court failed to read the volumes of data which were sent to it.  Respondent had no information or authority to support any of  these remarks.

{¶ 15} Canon 2 does not distinguish, as respondent would have us distinguish, between comments on and "off the record."  Nor does the canon distinguish between unedited comments to a television reporter and the edited portions of those comments that are ultimately broadcast to the general public.  The canon requires that a judge "at all times" conduct himself or herself in a manner that promotes public confidence in the judiciary.  We recognize that on occasion a judge may unwittingly make an inappropriate casual remark.  However, respondent's remarks about the appellate court were not unwitting, inadvertent "slips."  His statements were part of lengthy intemperate comments about the appellate court's reversal of his decision.

{¶ 16} By this series of statements respondent also violated Canon 3(B)(9) of the Code of Judicial Conduct, which requires that a judge not make any comment

6

about a pending case that might reasonably be expected to affect its outcome. Canon 3(B)(9) does not preclude judges from making "public statements in the course of their official duties or from explaining for public information the procedures of the court." However, at the time of his statements to the television reporter, respondent was not acting in the course of his official duties, nor were his comments limited to an explanation of court procedures.

{¶ 17} For the same reasons, we find, as did the board, that respondent's conduct in the television interview violated Canon 4, which requires that a judge avoid impropriety and the appearance of impropriety in all of his activities and, because the judge is a lawyer, his same actions violated Gov.Bar R. IV(2) and Gov.Jud. R. I(2), both of which provide that it is the duty of a lawyer to maintain a respectful attitude toward the courts. Respondent's statements to the television reporter, whether or not ultimately broadcast, and whether or not "on the record," were false, intemperate, disrespectful, and improper for a judicial official.

{¶ 18} We agree with the board that respondent's comments to The Call and Post about the operation of the juvenile detention center also violated Canon 2. Respondent should not have given The Call and Post reporter his opinion that it was routine for juvenile detention center staff members to beat inmates and also routine for them to "cover up" the beatings. Nor should respondent in speaking with the media have charged that such coverups were a result of a conspiracy of the court's public relations officer and the administration. By suggesting to the media that the administrative judge was engaged in a conspiracy with officials of the juvenile detention center to "cover up" violations, that the administrative judge failed to provide leadership in solving the problems of the detention center, and that the juvenile court was "out of control," respondent failed to cooperate with other judges and court officials in the administration of the court's business and, thus, was in violation of Canon 3(C)(1), Gov.Bar R. IV(2), Gov.Jud. R. I(2), and DR 8-102(B).

**{¶ 19}** As found by the board, respondent's comments to the Cleveland Free Times in August 1995 about Camp Roulston also violated Canon 2, Gov.Bar R. IV(2) and Gov.Jud. R. I(2). Respondent's expressed opinion that the Administrative Judge of the Cuyahoga County Court of Common Pleas, Juvenile Division, and the court's Director of Community Services and Probation were the two most entrenched and incompetent bureaucrats at the courthouse and his unsupported statements that they lied to federal government officials about the success rate of the facility should not have been made to the media or anyone else. Even though the board did not find that respondent had criticized the administrative judge, it found that he clearly maligned court officers working under that judge's direction and control, and thereby maligned the court itself.

**{¶ 20}** Respondent, like many judges, cares deeply about the area of the law under his jurisdiction. The mitigation evidence introduced in this case is directed to his concern for children, and particularly the welfare of underprivileged children. But strong feelings do not excuse a judge from complying with the judicial canons and the Disciplinary Rules. Nor is deep concern a license to criticize fellow members of the judiciary who may hold different views.

**{¶ 21}** Like the board, this court has no doubt that respondent's remarks about the appellate court and his statements about the juvenile detention center undermine the public's confidence in a fair and impartial judicial system and violate the Code of Judicial Conduct. Those comments which were specifically directed at a judge violated the Disciplinary Rules.

**{¶ 22}** We therefore believe that an appropriate sanction in this case is suspension from the practice of law for eighteen months with the final twelve months stayed. Gov.Jud.R. III(7)(A) mandates that a disciplinary order suspending a judge from the practice of law shall include a provision immediately suspending the judge from judicial office without pay for the term of suspension. Accordingly, respondent is hereby suspended from the practice of law for eighteen months with

the final twelve of those months stayed, and he is hereby suspended without pay from his position as Judge of the Cuyahoga County Court of Common Pleas, Juvenile Division, for six months. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 23} Language is a wonderful and powerful part of our lives. It can make us cry; it can bring us great joy. Language and context are inextricably intertwined. When they are at odds, the result can be destructive. The choice of words, the audience, and the time and place we say something all affect the impact of language.

{¶ 24} The context of the language used in this case is especially complex. This case has to be judged before the backdrop of the natural tension between our rich history of free speech under the First Amendment and the limitations to judicial speech contained in Canon 2 of the Code of Judicial Conduct. Canon 2 requires judges to act in a manner that "promotes public confidence in the integrity and impartiality of the judiciary." Canon 2, in its general terms, addresses the issue of context in judicial speech by requiring appropriateness.

{¶ 25} Canon 2 was never meant to stifle judges — it recognizes that a judge need not sit silent in order to show his or her respect for the law and promote public confidence in the judiciary. Canon 2(A) encourages judges to speak about the law and the legal system and consult with other governmental bodies about the administration of justice. Sometimes a judge's commentary must necessarily be tough.

{¶ 26} On the other hand, Canon 2 recognizes that judges are not ordinary citizens, and that the words they say reflect on the entire institution, an institution

that owes its life to public confidence. An erosion of that confidence affects everyone. Thus, while every citizen has the right to stand up and speak out, even irresponsibly, a judge is limited to speaking out responsibly. That limitation should hardly be thought of as a muzzle.

{¶ 27} Judge Ferreri's choice of words and the context in which he spoke them went beyond tough commentary. Judge Ferreri is not being sanctioned for the fact that he spoke out, but instead because of the manner in which he did it. He employed false and purposely incendiary comments. Off the record or not, some of his comments were made on camera.

{¶ 28} There is a difference in degree to what this judge said, a difference that makes a sanction appropriate in this case. The majority opinion recognizes the necessary vibrancy of the judiciary, but also recognizes that judges must act responsibly. Respondent in this case did not, and I agree with the majority in that. Respondent's genuine concern and passion for the juvenile court system is laudable; his judicial temperament in this case was unacceptable.

{¶ 29} I dissent only from the sanction the majority imposes. I would have followed the recommendation of the panel: an eighteen-month suspension with the entire suspension stayed in favor of probation under the monitoring of a judge, with conditions.

_____