[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 321.]

OFFICE OF DISCIPLINARY COUNSEL *v*. HOAGUE.

[Cite as *Disciplinary Counsel v. Hoague*, 2000-Ohio-340.]

*Judges—Misconduct—Six-month suspension stayed—Conviction of coercion—*
*Acting in a manner that does not promote public confidence in the*
*integrity and impartiality of the judiciary—Misusing authority of judicial*
*office to achieve personal goal of reprimanding persons believed guilty of*
*reckless driving—Canon 2.*

(No. 99-1498—Submitted October 12, 1999—Decided March 29, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 98-80.

_____

{¶ 1} On June 18, 1998, respondent, Michael C. Hoague of Delaware, Ohio, Attorney Registration No. 0024771, a judge of the Delaware Municipal Court, was driving his car north in Delaware County on U.S. Route 23 with his wife and mother-in-law as passengers. At that time, he reportedly observed an automobile being operated recklessly and erratically, driving on the berm to pass some vehicles, cutting through a gasoline service station to pass other cars, and then driving on the shoulder or berm again, at a speed well in excess of the posted limit. Respondent contacted the State Highway Patrol and the Delaware police by means of his cell phone to report the incident and noted the appearance of the car, the driver, the passenger in the vehicle, and its license plate number. Respondent reported the incident to the police but did not file charges.

{¶ 2} The next day respondent ascertained that Jenny Panescu was the person in whose name the erratically driven vehicle was registered. He then wrote and mailed a letter to Panescu on Delaware Municipal Court letterhead that stated:

**"THIS IS A SERIOUS MATTER DESERVING YOUR IMMEDIATE ATTENTION**

"Dear Ms. Panescu:

"This is to inform you that a complaint has been made with the Ohio State Highway Patrol, as well as, the Delaware Police Department concerning your green 1994 Toyota Camry LE automobile. It is alleged that on Friday June 19, 1998 at approximately 1:00 p.m., you and a male subject were involved in several near accidents and committed numerous traffic violations along U.S. Route 23 and connecting roadways in Delaware County. This matter is now under investigation.

"If you wish to avoid possible further legal action being taken against you, you must contact this Court **no later than Friday June 26, 1998 by 4:30 p.m**. to discuss your involvement in this incident. You should call (740) 368-1575 and ask to speak with either Linda Fisher or Cathy Brooks. When you call you should inform them that you are responding to this letter. In the event you fail to contact my office in person or by telephone by such time, I will authorize the filing of any appropriate criminal and/or traffic charges, the seizure and impoundment of your motor vehicle and the issuance of a warrant for your arrest.

Sincerely,

Michael C. Hoague, Judge"

{¶ 3} On June 22, 1998, Panescu and Russ Brown, who was driving the vehicle observed by respondent, responded to the letter by appearing at the Delaware Municipal Court. In the courtroom, they were seated at the defendant's table while respondent sat at the bench. During the meeting, respondent threatened criminal prosecution of Panescu and Brown and made the following statements:

"You can say whatever you want, but at this point in time you had probably best shut your mouth until I'm finished talking, okay?"

"It is also apparent to me today that you went to the Sheriff's office, so I'll take it up with the Sheriff's department and make sure they have a fuller picture of what actually happened."

"I don't know whether your employer is aware of what you all do on your lunch hour or whatever or whether that was company related travel or not. I'll have a discussion with Mr. Adrian [Panescu and Brown's employer] about your driving habits."

{¶ 4} Later that afternoon, respondent placed a telephone call to Panescu and Brown's employer but was unable to contact him.

{¶ 5} On July 22, 1998, respondent wrote an "open letter" of apology published in the Delaware Gazette, addressed to "the people of Delaware County, Mrs. Jenny Panescu, Mr. Russell Brown, and Editor, the Gazette," which concluded "I sincerely regret my lapse of judgement and apologize to you."

{¶ 6} On February 23, 1999, respondent was convicted of the second-degree misdemeanor of coercion with respect to his June 19, 1998 letter to Panescu. When asked at the trial about writing and sending the letter, respondent said, "At no time then or now do I feel or believe that I did something that was not within my legal authority."

{¶ 7} On December 7, 1998, relator, Office of Disciplinary Counsel, filed a complaint charging that respondent's conduct violated several Canons of Judicial Conduct and the Code of Professional Responsibility. After respondent answered, a panel of the Board of Commissioners on Grievances and Discipline ("board") heard the matter, received stipulations, and found the facts as stated.

{¶ 8} The panel concluded that respondent violated Canon 2 of the Code of Judicial Conduct (a judge shall act in a manner that promotes public confidence in the integrity and impartiality of the judiciary), noted that this matter was an isolated

incident in an otherwise unblemished judicial career, and recommended that respondent receive a public reprimand. The board adopted the findings, conclusion, and recommendation of the panel.

_____

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Kenneth R. Donchatz*, Assistant Disciplinary Counsel, for relator.

*Geoffrey Stern,* for respondent.

_____

### Per Curiam.

{¶ 9} We adopt the findings of the board. Respondent misused the authority of his judicial office in an attempt to achieve his personal goal of reprimanding persons he believed were guilty of reckless driving.

{¶ 10} A judge who observes a crime outside the courtroom has only the power of an ordinary citizen. Respondent's proper course would have been to file charges against Panescu and Brown. Instead, respondent used the power of his office to achieve his personal ends. On court letterhead he made false statements to intimidate Panescu and Brown into appearing before him so that he could personally reprimand them. The language in respondent's letter, "a complaint has been made with the Ohio State Highway Patrol," and "[i]f you wish to avoid possible *further legal action*" (emphasis added), implies, if it does not state, that Panescu had already been charged with a crime.

{¶ 11} Additionally, respondent's official-sounding jargon, "[it] is alleged" and "[t]his matter is now under investigation," together with the threat of impounding Panescu's automobile unless she appeared before him, constituted further intimidating language. To this should be added the fact that respondent was the only municipal judge on the court and the person who Panescu and Brown might assume would rule on their case.

**{¶ 12}** For writing this letter respondent was properly convicted of the misdemeanor of coercion.

**{¶ 13}** But respondent did more. When Panescu and Brown appeared in his courtroom, they sat at the defendant's table while he sat at the bench. Without informing them of the right to counsel, respondent conducted an arrogant inquisition, finally threatening to contact their employer about their driving habits, a threat which he apparently later attempted to carry out. He was bound by no evidentiary rules, nor was there a judge or arbiter present to whom Panescu and Brown could appeal for protection against unfair interrogation.

**{¶ 14}** Contrary to respondent's belief as expressed to the board even after his letter of apology, we find, as did the board, that neither writing the letter to Panescu nor holding the inquisitory hearing was within the bounds of his legal authority. We conclude that respondent failed to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

**{¶ 15}** As we recently noted in *Disciplinary Counsel v. Ferreri* (1999), 85 Ohio St.3d 649, 654, 710 N.E.2d 1107, 1111, although a judge may feel strongly about violations of the law, "strong feelings do not excuse a judge from complying with the judicial canons and the Disciplinary Rules." Respondent's conduct in this case warrants a more severe sanction than recommended by the board. Respondent is hereby suspended from the practice of law for six months with the entire six months stayed, provided that during the six-month period respondent engages in no further violations of the Code of Judicial Conduct. Costs are taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, RESNICK, COOK and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY and PFEIFER, JJ., dissent and would publicly reprimand respondent.

———————————