[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 109.]

OFFICE OF DISCIPLINARY COUNSEL *v*. KARTO.

[Cite as *Disciplinary Counsel* v. *Karto*, 2002-Ohio-61.]

*Judges—Misconduct—Six-month suspension including suspension from judicial office without pay for the term of the suspension—Failing to uphold the integrity and independence of the judiciary—Failing to comply with the law and act in a manner that promotes public confidence in the integrity of the judiciary—Failing to disqualify himself when he knows he is likely to be a material witness—Failing to be faithful to the law and maintain professional competence—Use of outdated statute or rule book at sentencing—Failing to dispose of all judicial matters promptly, efficiently, and fairly—Engaging in conduct prejudicial to the administration of justice—Failing to perform the duties of the office impartially and diligently—Engaging in ex parte communications—Failing to disqualify himself when his impartiality might reasonably be questioned.*

(No. 01-877—Submitted August 28, 2001—Decided January 16, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 99-77.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 1} On July 3, 2000, relator filed a nine-count amended disciplinary complaint against respondent, Judge Steven Ray Karto, Attorney Registration No. 0020890, who was admitted to the practice of law in the state of Ohio on November 4, 1977, and has served as the sole judge of Harrison County since April 1991.[1] The amended complaint alleged that respondent had engaged in multiple violations

_____

1. Relator filed an initial complaint against respondent on December 6, 1999.

of the Code of Judicial Conduct and the Disciplinary Rules. Respondent answered, and the matter was considered by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} Counts I and II of the complaint involve the John P. Snodgrass contempt proceedings. Respondent instituted these proceedings against Snodgrass, the Director of the Harrison County Department of Human Services, because he believed that Snodgrass had deliberately disobeyed an order to place an adjudicated dependent child in foster care. Snodgrass, however, informed respondent that there was no appropriate placement for the child, who needed therapeutic placement. At the contempt hearing, Snodgrass's attorney asked respondent to testify. Respondent agreed to be called as a witness, removed his robe, and testified. Both respondent and defense counsel made closing remarks, and then respondent returned to the bench. Respondent ultimately held Snodgrass in criminal contempt, but refused to impose a sentence, despite a request to do so. Since there was no final, appealable order, Snodgrass could not appeal the ruling. The panel concluded that respondent violated Canons 1 (a judge shall uphold the integrity and independence of the judiciary), 2 (a judge shall comply with the law and act in a manner that promotes public confidence in the integrity of the judiciary), 3(E)(1)(d)(v) (a judge shall disqualify himself when he knows he is likely to be a material witness), 3(B)(2) (a judge shall be faithful to the law and maintain professional competence), and 3(B)(8) (a judge shall dispose of all judicial matters promptly, efficiently, and fairly in compliance with the Rules of Superintendence) of the Code of Judicial Conduct, and DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

{¶ 3} Count IV stems from the Patricia Smith contempt proceeding. After respondent revoked the probation of Smith's boyfriend, respondent and his bailiff left the courthouse and walked past Smith and others. According to respondent, Smith pointed her finger at him and made a "popping" sound like a gun. Believing

that this was a threat, respondent ordered Smith to be in the court the following day. Smith denied threatening respondent. Later, in the disciplinary case, Smith's friends corroborated her side of the story, but respondent's bailiff testified that he, too, had heard the "popping" sound. Respondent found Smith to be in civil contempt and sentenced her to thirty days in jail and fined her $250. The sentence was suspended on the condition that she did not cause any further problems.

{¶ 4} According to the stipulated facts, this proceeding took place without the filing of a complaint or a case number, and without a journal entry memorializing the proceedings. When asked why he did not advise Smith that she had the right to be represented by counsel, respondent told the panel that he had initially intended only to admonish Smith, not to bring contempt charges against her. The panel found that respondent violated Canons 1, 2, 3 (a judge shall perform the duties of the office impartially and diligently), and DR 1-102(A)(5).

{¶ 5} Count V involves respondent's handling of juvenile proceedings involving Jonathan and Doug Grim, Jr. The panel found that respondent had relied on an outdated statute book and incorrectly sentenced Doug Grim, Jr. to ninety-day concurrent sentences at Sargus Juvenile Detention Center.

{¶ 6} The panel further found that respondent had *ex parte* communications with employees of the Juvenile Probation Department concerning the Grim brothers. Kari Miles, an employee of the juvenile probation department, told respondent that the boys had made threats against her and her property. Respondent told her to contact the prosecutor's office. She subsequently filed delinquency complaints against the boys.

{¶ 7} Respondent issued arrest warrants to revoke the boys' probation. A juvenile probation officer removed the boys from school and brought them before respondent. Although the boys indicated that they had an attorney to represent them, respondent conducted the detention hearing without their attorney being present, and had the boys question the state's witness. Respondent ordered the

brothers to be detained at Sargus Juvenile Detention Center until the adjudicatory hearing could be held. Respondent, who was accused of being biased, agreed to recuse himself from further proceedings but did so because he felt there was an appearance of impropriety, since Miles was his employee.

{¶ 8} At the disciplinary hearing, Harrison County Prosecuting Attorney Matthew Puskarich told the panel that respondent contacted him, and that respondent had asked him to press felony charges against the boys. Although respondent disputed this assertion, the panel accepted the prosecutor's account and found that respondent's request to press felony charges indicated a bias and prejudice on his part. The panel also found that respondent had violated Canons 1, 3(B)(2), 3(B)(7) (a judge shall not engage in *ex parte* communications), and 3(E)(1) (a judge shall disqualify himself when his impartiality might reasonably be questioned).

{¶ 9} With respect to Count VI, the panel found that on September 2, 1999, respondent mistakenly informed Joseph Crites, convicted of a felony DUI, that his appeal time had expired and that he consequently did not need appointed counsel. Crites perfected his appeal acting *pro se*. Apparently realizing his mistake, respondent granted Crites's request for appointed counsel. The panel found no clear and convincing evidence of disciplinary violations in this matter.

{¶ 10} Count VIII stems from respondent's handling of a juvenile matter involving Andrew Akers. Akers had been taking part in a juvenile diversion boot camp-type program ("C-CAP") and was brought into court when a C-CAP sergeant discovered that Akers was not living at home and was not getting the medication he needed. Akers told respondent that he did not want to be placed in foster care. However, Akers was satisfied when respondent told him that he would be placed in the Dunlap foster home, which was operated by the parents of a C-CAP employee.

**{¶ 11}** On July 24, 1997, respondent issued an order placing Akers in the Dunlap foster home, which was located in Harrison County but licensed through Guernsey County. A representative from Guernsey County Children Services Board contacted Kristen Davia, a supervisor at the Harrison County Children Services, and advised her that although the Dunlaps agreed to the placement, Akers could stay with them for only a maximum of three days. Therefore, she urged Davia to transfer Akers as quickly as possible. Davia arranged for Akers's transfer the next day.

**{¶ 12}** When respondent learned about this transfer, he presented the Harrison County Sheriff's Department with an *ex parte* order to return Akers to the Dunlap foster home. The order was made at 12:07 a.m. on July 26, 1997. An employee of Davia called her at home just after midnight to relay the judge's instructions that Akers was to be returned "immediately." As a result, at 2:00 a.m., Akers was awakened and taken back to the Dunlap foster home. Three days later, respondent issued an order returning Akers to the second foster home.

**{¶ 13}** Respondent contacted the Harrison County Prosecuting Attorney and asked that arrest warrants be prepared for contempt for Davia and John Snodgrass. Respondent told the prosecutor to advise Snodgrass that if Davia resigned from Children Services, then he would not proceed with the contemplated contempt action or bring other charges against Davia. The panel found no violations of Canons 1, 2, or 3, but did find that respondent had violated DR 1-102(A)(5).

**{¶ 14}** No violations were found in regard to Count IX, which alleged that respondent's combined behavior constitutes a pattern and practice of abusing the contempt power.

**{¶ 15}** After finding that the above violations had occurred, the panel recommended that respondent be suspended from the practice of law for one year, with the entire suspension stayed, provided that respondent engage in no further

misconduct. The board adopted the panel's findings of fact and conclusions of law, but disagreed with the recommended sanction. Instead, the board recommended that respondent be suspended from the practice of law for one year, but with only six months of the suspension stayed.

{¶ 16} Respondent objects to the board's findings and to the board's recommended sanction. Respondent contends that his actions do not constitute sanctionable judicial misconduct, but even if they do, he maintains that the mitigating evidence in his favor supports a lesser sanction than that imposed.

{¶ 17} It is fundamental that in disciplinary proceedings, the relator must prove by clear and convincing evidence the facts necessary to prove an ethical violation. *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, paragraph two of the syllabus. Under this standard, we find that relator has proven by clear and convincing evidence that respondent has violated the Code of Judicial Conduct with respect to Counts I, II, IV, V, and VIII. We also agree with the board's decision to dismiss Counts VI and IX on the ground that these violations were not proven by clear and convincing evidence.[2] Therefore, we adopt the board's findings of fact and conclusions of law.

{¶ 18} Regarding the Snodgrass and Smith contempt matters (Counts I, II, and IV), respondent argues that he acted within his contempt power and that the board erred in excluding expert testimony to support this conclusion. Contrary to respondent's position, we find that the panel was justified in excluding expert testimony regarding respondent's contempt power. The panel members consisted of an attorney, a judge, and a layperson who had served on the board for several years. These individuals were qualified to decide the issues of whether respondent had abused his contempt power and whether his actions constituted judicial

---

2. Prior to the hearing, relator dismissed Counts III and VII of the complaint.

misconduct. Therefore, since no expert testimony was necessary to decide these issues, the panel chair properly excluded the expert testimony sought.

{¶ 19} As to the merits of these counts, we disagree with respondent's position that he violated no standards of the Code of Judicial Conduct and was justified in instituting the contempt proceedings against these individuals. Canon 1 requires a judge to uphold the integrity and independence of the judiciary. Canon 2 provides that a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Canon 3 states that a judge shall perform the duties of judicial office impartially and diligently.

{¶ 20} Respondent clearly violated all three canons in his handling of the Snodgrass and Smith contempt hearings. By his conduct, respondent used his position as a judge to conduct legal proceedings without the proper formalities, simply as a means to intimidate these individuals. We have previously stressed that "[i]t is of utmost importance that the public have confidence in the integrity and impartiality of the judiciary." *Disciplinary Counsel v. Allen* (1997), 79 Ohio St.3d 494, 495, 684 N.E.2d 31, 32. Certainly, respondent's handling of these contempt proceedings not only throws doubts on respondent's impartiality, but also weakens the public's perception of the integrity of the judiciary. Therefore, the manner in which respondent conducted these proceedings indicates a clear abuse of his judicial authority, and is in contravention of these three canons.

{¶ 21} Moreover, this court recently held that "[a] judge acts in a manner 'prejudicial to the administration of justice' within the meaning of DR 1-102(A)(5) when the judge engages in conduct that would appear to an objective observer to be unjudicial and prejudicial to the public esteem for the judicial office." *Cleveland Bar Assn. v. Cleary* (2001), 93 Ohio St.3d 191, 754 N.E.2d 235, syllabus. Though respondent contended that he went after Snodgrass simply to impress upon him that there are consequences for refusing to obey a valid court order, it is evident that

respondent misused his contempt power and engaged in conduct prejudicial to the administration of justice pursuant to DR 1-102(A)(5). Similarly, respondent admitted that he initially called Smith into court only to admonish her. The fact that he then decided to cite her for contempt and did so without formal proceedings and without advising her of her right to counsel clearly indicates a violation of DR 1-102(A)(5).

{¶ 22} We also agree with the board's implied finding that the refusal to sentence Snodgrass and to enter a final, appealable order violated Canons 1, 2, 3(B)(2), and 3(B)(8). In addition, respondent's decision to testify at the contempt hearing was a violation of Canon 3(E)(1)(d)(v), which calls for judges to disqualify themselves when their impartiality might reasonably be questioned due to their knowledge that they are likely to become material witnesses in the proceeding. Respondent's decision to step off the bench, discard his robe, and testify as a witness was inappropriate. His impartiality is surely called into doubt since he not only initiated the contempt proceedings and issued the ruling in the case, but also served as witness and prosecutor by making a closing statement. Under these circumstances, the board was warranted in concluding that respondent had violated the above canons.

{¶ 23} With respect to Count V, involving the Grim brothers, respondent likewise contends that he committed no judicial misconduct. Although he admits that he was mistaken in using an outdated statute book when sentencing Doug Grim, Jr., he believes that this is not tantamount to judicial misconduct. He further maintains that he was justified in having *ex parte* communications with the probation officers, and that he conducted the detention hearing in a proper and timely fashion. Finally, respondent argues that relator did not prove by clear and convincing evidence that he told the prosecutor to bring felony charges against the boys.

**{¶ 24}** We find that relator has sustained its burden of proof by clear and convincing evidence that respondent's conduct violated Canons 1, 3(B)(2), 3(B)(7), and 3(E)(1)(a) (a judge shall disqualify himself in a proceeding in which his partiality might reasonably be questioned due to personal bias or prejudice concerning a party), and DR 1-102(A)(5).

**{¶ 25}** Contrary to respondent's assertions, his use of an outdated rule book in sentencing Doug Grim, Jr. is a clear violation of Canon 3(B)(2). Respondent's sole explanation to the panel for using the outdated version was that the new version had been stolen. However, this does not excuse him from abiding by his responsibility to keep himself apprised of changes in the law and to sentence an individual accordingly.

**{¶ 26}** We further find that there was clear and convincing evidence presented to show that respondent violated the above canons and DR 1-102(A)(5) by having improper *ex parte* communications and by acting improperly in the handling of the boys' detention hearing. The fact that the hearing was held promptly is immaterial, particularly in light of the fact that respondent conducted the hearing without the boys' legal counsel being present and asked the juveniles themselves to cross-examine the state's witness. Moreover, even though respondent ultimately recused himself, there is evidence that respondent was biased and that he should have recused himself earlier. The testimony of Prosecuting Attorney Matthew Puskarich that respondent instructed him to bring felony charges against the boys indicates such a bias. Although respondent denies that he made this request, there is testimony to the contrary, and we therefore defer to the panel's finding. See *Disciplinary Counsel v. Zingarelli* (2000), 89 Ohio St.3d 210, 217-218, 729 N.E.2d 1167, 1174.

**{¶ 27}** We adopt the board's conclusions of law regarding Count VI, the Crites matter, finding no violations of Canon 3(B)(2) or DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or

misrepresentation), or (A)(5). The evidence is insufficient to prove these violations.

{¶ 28} With respect to Count VIII, the Akers matter, we agree with the board's finding that respondent violated DR 1-102(A)(5). By threatening Davia with contempt proceedings and then indicating that he would forgo those proceedings if she resigned her position at Children Services, respondent clearly engaged in conduct prejudicial to the administration of justice, *i.e.*, "conduct that would appear to an objective observer to be unjudicial and prejudicial to the public esteem for the judicial office." *Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 754 N.E.2d 235, syllabus.

{¶ 29} Relator objects to the board's finding that respondent did not violate Canons 1 and 2 with respect to the Akers matter. Relator contends that just as he did in the Smith and Snodgrass matters, respondent used the tools of his office for personal purposes. Although we agree that there was a violation of DR 1-102(A)(5), and that it was egregious for respondent to make such threats against Davia, unlike in the Smith and Snodgrass matters, respondent did not carry through with any contempt proceedings. Under these circumstances, we do not find that respondent violated Canons 1 and 2.

{¶ 30} With regard to Count IX, we adopt the board's conclusions of law that there was insufficient evidence presented to establish a pattern of judicial abuse by respondent concerning his contempt power. Although respondent has committed two acts of judicial misconduct involving the abuse of his contempt power, relator has not proven by clear and convincing evidence that there was a pattern of abuse. Nor does relator object to the dismissal of this count. Accordingly, we defer to the board's opinion and dismiss Count IX.

{¶ 31} Having found that respondent committed judicial misconduct, we must now decide the appropriate sanction. The panel, in recommending that respondent receive a one-year suspension, with the entire year stayed, found several

10

mitigating factors in respondent's favor: a total absence of any prior disciplinary record, excellent character references, full cooperation with the disciplinary investigation, an unblemished record as a sitting judge, and much community involvement. In making this recommendation, the panel turned to *Disciplinary Counsel v. Hoague* (2000), 88 Ohio St.3d 321, 725 N.E.2d 1108, for guidance. In *Hoague*, respondent was a municipal court judge who was found to have misused his judicial office to achieve his personal goal of reprimanding people he believed were guilty of reckless driving. In *Hoague*, we imposed a six-month suspension, with the entire six months stayed. The board, however, found *Hoague* to be inapposite, since that case involved a single act of misconduct, whereas this case involves more than an isolated judicial act. Accordingly, the board imposed a one-year sentence, with six months stayed on the condition that respondent commit no further violations.

{¶ 32} We agree with the board that the behavior exhibited in this case is more serious than the isolated incident involved in *Hoague*. As the board stated, respondent used "the tools of his office granted to him by the State of Ohio not for the intended purpose of impartially deciding cases but for some other and often personal purposes." While we agree with the board's characterization of respondent's misconduct, we nevertheless depart from the board's recommended sanction. Instead, we find that a six-month suspension is the appropriate sanction, given the nature of the misconduct and taking into consideration the evidence in mitigation.

{¶ 33} Respondent is hereby suspended from the practice of law for six months. Gov.Jud.R. III(7)(A) mandates that a disciplinary order suspending a judge from the practice of law include a provision immediately suspending the judge from judicial office without pay for the term of the suspension. Accordingly, respondent is hereby suspended without pay from his position as judge of the Harrison County Court of Common Pleas. Costs are taxed to the respondent.

*Judgment accordingly.*

MOYER, C.J., RESNICK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and PFEIFER, JJ., dissent.

COOK, J., dissents.

———————————

**PFEIFER, J., dissenting.**

**{¶ 34}** Over the course of his judicial career, Judge Karto did some things he would be better off not having done. Some of his judicial actions likely violated Disciplinary Rules and the Code of Judicial Conduct. However, no one of those missteps seems particularly egregious.

**{¶ 35}** I am especially concerned about the majority's broad assertion that the "use of an outdated rule book * * * is a clear violation of Canon 3(B)(2)." Apparently, the single use of an outdated rulebook is the equivalent of professional incompetence. It is an unduly harsh standard.

**{¶ 36}** Something about this investigation just doesn't feel right. Subject anyone to enough scrutiny and you will find unsightly blemishes. As the sole common pleas judge in Harrison County, Judge Karto had ample opportunity to come under scrutiny. One witness, who had been found in contempt of court by Judge Karto, waited five years before complaining about Judge Karto's behavior. A dismissed grievance concerning delinquent statistical reporting was filed by the wife of a part-time county judge. That same part-time county judge had had a grievance filed against him by Judge Karto's parents. Such small-town stone throwing ought not to be dignified by our disciplinary process.

**{¶ 37}** The two most significant charges against Judge Karto revolve around emotionally charged events involving the placement of children with foster homes. It is not uncommon in such situations for judges and heads of administrative agencies to butt heads. The ultimate responsibility is on the judge to proceed in the best interests of the children. It is understandable that his tolerance

12

might be stretched to the breaking point when he perceives others to be acting contrary to court orders. It does not excuse his lack of strict adherence to the law, but it explains it and suggests that he did not willfully breach his duties.

{¶ 38} Because not one of the grievances filed against Judge Karto is egregious or the result of a willful breach of the judicial code, see Gov.Jud.R. I(1), we should not allow ourselves to be overwhelmed by the multiplicity of grievances filed. I remain unconvinced that any one of them, or even all of them in aggregate, justify a suspension from the practice of law.

{¶ 39} To remove a sitting judge from office for violations that either involved little harm or were capable of correction on appeal threatens the foundation of an independent judiciary. I dissent because I believe the appropriate sanction is a public reprimand.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

_____

**COOK, J., dissenting.**

{¶ 40} Because I would adopt the sanction recommended by the board, I respectfully dissent.

{¶ 41} In assessing the sanction appropriate here, the board credited aggravating circumstances, expressly noting respondent's "refusal to acknowledge the wrongful nature of his conduct and the presence of multiple offenses." The Guidelines for Imposing Lawyer Sanctions state that the board may consider such factors "in favor of recommending a more severe sanction." Rules and Regulations Governing Procedures on Complaints and Hearings before the Board of Commissioners on Grievances and Discipline of the Supreme Court, Section 10(B)(1), Guidelines for Imposing Lawyer Sanctions. See, also, ABA Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend.1992), Standard 9.2. Though respondent's filings with this court characterize his testimony as showing remorse, the board found that "the

respondent judge has shown little remorse or acceptance of responsibility for any misconduct." The majority's decision, however, fails to accord sufficient weight to these aggravating circumstances.

{¶ 42} The nature of the misconduct and the aggravating factors present in this case warrant the recommended one-year suspension with six months stayed.

_____

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Dianna M. Anelli*, Assistant Disciplinary Counsel, for relator.

*Kegler, Brown, Hill & Ritter*, *Geoffrey Stern* and *Christopher J. Weber*; and *Francesca T. Carinci*, for respondent.

_____