DISCIPLINARY COUNSEL *v.* COX.

[Cite as *Disciplinary Counsel v. Cox,*
113 Ohio St.3d 48, 2007-Ohio-979.]

(No. 2006–1906—Submitted November 29, 2006—Decided March 21, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Marion Neal Cox of East Cleveland, Ohio, Attorney Registration No. 0041495, was admitted to the practice of law in Ohio in 1989. In March 1999, respondent was appointed acting judge in the East Cleveland Municipal Court. He served in that capacity until January 2006.

{¶ 2} On December 5, 2005, relator, Disciplinary Counsel, charged respondent with three counts of professional misconduct for violations of the Code of Judicial Conduct and the Code of Professional Responsibility. Respondent answered the complaint with admissions and denials, but later stipulated to most of the charges against him and the underlying facts.

{¶ 3} A panel of the Board of Commissioners on Grievances and Discipline heard the cause, and although he had notice of the proceeding, respondent chose not to attend. The panel made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

Misconduct

{¶ 4} Count I alleges that respondent acted improperly in issuing a contempt order. Count II recounts respondent's conviction of a misdemeanor drug charge. Count III alleges that respondent grossly exceeded the bounds of professionalism during an argument with opposing counsel.

*Count I*

{¶ 5} According to the stipulations, James C. Portis accompanied his nephew on June 24, 2004, to proceedings in respondent's courtroom. After the proceedings concluded, Portis and the nephew left the courtroom, apparently with instructions to pay assessed fines and costs. Portis learned from a court cashier that an additional $200 fee was due. During their exchange, Portis allegedly said to the cashier that "judges can be crooks, too." Portis then left the courthouse to wait outside for his nephew.

{¶ 6} Within 15 minutes or so, the court cashier had reported to respondent that Portis had made a remark implicating respondent's integrity as a member of the judiciary. Respondent instructed police officers to arrest Portis. The officers took Portis into custody and kept him in police lockup for approximately three hours.

{¶ 7} Around 3:00 p.m., officers brought Portis back to respondent's courtroom, where respondent accused him of indirect contempt of court. The transcript documents the following exchanges between respondent and the court cashier and then respondent and Portis:

{¶ 8} "This was indirect contempt. I did not hear it. So, that way, we're going to have to have a hearing on it. I'll set a bond today. You'll have to come back for a hearing. But since you'll be making the charge, I need to hear what you heard so I can determine if that's contempt or not."

{¶ 9} The cashier then described the interchange with Portis: "This gentleman came to the window, said, " 'Give me the amount so that I can, uh, pay you all.' I then said to him, 'You're not paying me, you're paying the city.' "

{¶ 10} According to the cashier, Portis then stated, "The judge is a crook." At this point, the cashier's supervisor intervened.

{¶ 11} Portis entered a not guilty plea and stated, "I don't understand what's going on here."

{¶ 12} Respondent stated:

{¶ 13} "Well * * * let me explain it to you. If I had heard it myself, I could have made a determination that it's contempt, if you say something disrespectful in front of the Court. 'The judge' being 'the Court.'

{¶ 14} " * * * Since you didn't say it to my face, these witnesses here, they're the charging witnesses. They are Officers of the Court. They heard you say it. So what I have to do is, I am going to enter a plea of not guilty; you're saying you didn't do it. Set it down for trial. Have you post a bond, come back for the trial, you can have your lawyer, you can have witnesses and the like."

{¶ 15} Respondent continued:

{¶ 16} "You can be represented by counsel. If you can't afford counsel, we'll have a public defender to represent you. They will * * * have a hearing, just as if it was a trial. You'll get a chance to prove whether you're guilty or not guilty."

{¶ 17} Portis responded:

{¶ 18} "Your honor, what I'm trying to figure out is that—how is that—how, by me making a statement—making a statement, not meaning any harm, how am I doing you any harm if— I—I don't understand what's going on here."

{¶ 19} Respondent answered:

{¶ 20} "It's disrespectful to the judicial process and to the Court at large. If you're going to stand in the hallway, and there are other citizens there, and you're going to stand up and say, 'The Judge is a crook,' in front of other people, you have no—If you have evidence to support that and prove that, you bring it to court with you when we have the trial. That is what is disrespectful. If you have your thoughts, your comments, you want to say them to yourself, you keep them to yourself. But if you are coming to this Court, we have certain rules and procedures that we follow. You breached those by opening your mouth in the way (unintelligible) and saying the terms and statements that you did. That's what we're going to try to prove against you. You can—you can be sentenced up to a 180 days in jail and $1,000 fine."

{¶ 21} When Portis again indicated that he didn't understand why he was arrested, respondent stated:

{¶ 22} "For what you said when you were at the window. What you said in— in this young—young lady's presence. When you said the Judge was a crook. That's why you're standing there."

{¶ 23} Portis indicated that he then understood why he was in custody and before respondent.

{¶ 24} Respondent then stated:

{¶ 25} "That's right. That's—That's defamation. You shouldn't go around calling people something that they're not, unless you can prove it. You can't defame my character in front of other people and say I'm a crook, unless you can prove it. That's defamation. You don't have any right to say those things about me, or anybody.

{¶ 26} "Now, if you're too dense to understand that, maybe your lawyer will be able to explain it to you. Do you understand?"

{¶ 27} At the end of the proceeding, Portis pleaded no contest, was fined $500, and was assessed $69 in costs.

{¶ 28} Portis later filed a grievance with relator. In responding to relator's inquiries about the events leading to the Portis contempt citation, however,

respondent twice represented that he had actually heard Portis utter the offending "the judge is a crook" statement. Compounding these false statements, respondent further explained that it was because of this direct contempt that Portis was immediately placed in custody. Also contrary to actual events, respondent on one occasion reported to relator that Portis had pleaded no contest to contempt but had not been fined and had been released on time served.

{¶ 29} In addition, respondent concedes without explanation that he wrongly advised Portis that Portis had the burden of proving his innocence of the contempt charge. Respondent also had no explanation for why he admonished Portis with the threat "That's what we are going to try and prove against you," implicating his own partiality in the process. Finally, respondent acknowledged that he had insulted Portis by suggesting that he was "too dense to understand" the contempt charge against him.

{¶ 30} The parties stipulated and the board found that by citing Portis for contempt and misrepresenting the incident to relator, respondent had violated Canon 2 (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Canon 3(B)(4) (a judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity); and Canon 4 (a judge shall avoid impropriety or the appearance of impropriety in all of the judge's activities); and DR 1–102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

## Count II

{¶ 31} Around December 7, 1999, respondent was indicted for a felony offense of possession of drugs, a violation of R.C. 2925.11. The indictment charged that on April 18, 1999, respondent had in his possession five grams or less of cocaine, a Schedule II drug. On January 25, 2000, respondent pleaded guilty to attempted possession of drugs in violation of R.C. 2923.02 and 2925.11, a first-degree misdemeanor. Respondent was sentenced to three months' incarceration, all suspended, placed on six months' probation, and ordered to submit to regular drug testing.[1]

{¶ 32} The parties stipulated and the board found that respondent's illegal conduct and conviction violated Canon 1 (a judge shall uphold the integrity and independence of the judiciary), Canon 2, and Canon 4.

---

1. During these proceedings, which were contemporaneous with his assignment as an acting judge, respondent was declared indigent and was represented by a public defender.

## Count III

{¶ 33} On February 25, 2005, while acting as plaintiff's counsel in a case before Cuyahoga County Common Pleas Court Judge John D. Sutula, respondent attended a final pretrial hearing. At some point before, after, or during that proceeding, respondent accused a defense counsel on multiple occasions of being a "pathological liar." Immediately after the hearing, respondent accosted another defense counsel in the courtroom and in the hallway outside. Loudly and repeatedly, respondent taunted the second defense counsel with invectives, including profanities and racial slurs.

{¶ 34} The parties stipulated and the board found that respondent's use of profanity to berate opposing counsel during and in the vicinity of court proceedings violated DR 1–102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

## Recommended Sanction

{¶ 35} In recommending a sanction for respondent's misconduct, the board weighed the mitigating and aggravating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 36} Adopting the panel's report, the board found that in misrepresenting events leading up to and after the Portis contempt citation, respondent had submitted false statements during the disciplinary process, an aggravating factor under BCGD Proc.Reg. 10(B)(1)(f). The board found as a mitigating factor under BCGD Proc.Reg. 10(B)(2)(à) that respondent had no prior disciplinary record.

{¶ 37} Relator argued that respondent's failure to appear at the hearing constituted another aggravating factor and proposed that respondent receive a two-year suspension, with a conditional stay of six months. The board recommended a one-year suspension, and in doing so, accepted the panel's recommendation and explanation for that sanction:

{¶ 38} "The panel was primarily concerned with Count Two of the complaint in which Respondent entered a plea of guilty to 'attempted possession of drugs,' a first degree misdemeanor. That offense was the result of an amendment to an indictment for possession of drugs, 'to wit: Cocaine, a Schedule II drug in the amount of five grams or less.' Since Respondent did not appear at the hearing, or cause any evidence to be submitted on his behalf including any character witnesses, the panel could not formulate any conclusion whether the drug possession was indicative of a major drug problem or an isolated incident.

{¶ 39} "The panel recommends that Respondent be suspended from the practice of law for a period of one year."


Review

{¶ 40} We agree that respondent violated Canons 1, 2, 3(B)(4), and 4, and DR 1–102(A)(5) and 1–102(A)(6), as found by the board. The recommended sanction, however, is too lenient for respondent's egregious misconduct.

{¶ 41} Contempt power is properly used "to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815, paragraph two of the syllabus. But here, it is obvious that respondent used this power merely to intimidate and demean Portis. This grave abuse of the contempt power "not only throws doubts on respondent's impartiality, but also weakens the public's perception of the integrity of the judiciary." *Disciplinary Counsel v. Karto* (2002), 94 Ohio St.3d 109, 114, 760 N.E.2d 412.

{¶ 42} "It is of utmost importance that the public have confidence in the integrity and impartiality of the judiciary." *Disciplinary Counsel v. Allen* (1997), 79 Ohio St.3d 494, 495, 684 N.E.2d 31. Indeed, the judicial disciplinary system exists to guarantee "the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of this institution." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 33. Because respondent's abuse of the contempt powers seriously undermined these goals, an equally serious sanction must follow for the public's protection and as a deterrent to such subversive conduct in the future.

{¶ 43} Moreover, although neither the panel nor the board emphatically denounced respondent's false accounts of the events underlying the Portis contempt citation, we find these untruths intolerable. Respondent did not offer any reason for these inaccurate explanations, a fact that suggests to us that they were made intentionally to mislead relator, and not by some mistake. Such falsehoods certainly exacerbate the misconduct committed in this case. Accord *Columbus Bar Assn. v. Farmer*, 111 Ohio St.3d 137, 2006-Ohio-5342, 855 N.E.2d 462, ¶ 49.

{¶ 44} That a lawyer who once served as a member of the judiciary in this state would submit dishonest or misleading information during a disciplinary investigation to cover up his misuse of judicial authority is an affront to our entire legal and disciplinary system. When such conduct is considered in addition to respondent's drug use, berating of counsel, and use of profanities and racial slurs, a one-

year suspension is simply insufficient for misconduct of this magnitude. Respondent is therefore indefinitely suspended from the practice of law in Ohio.

{¶ 45} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents and would suspend respondent from the practice of law in the state of Ohio for two years, with one year stayed.

CUPP, J., not participating.

———————

Jonathan E. Coughlan, Disciplinary Counsel, for relator.