[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bachman*, Slip Opinion No. 2020-Ohio-6732.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6732

DISCIPLINARY COUNSEL *v*. BACHMAN.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bachman*, Slip Opinion No. 2020-Ohio-6732.]

*Judges—Misconduct—Violations of the Code of Judicial Conduct—Six-month suspension.*

(No. 2020-0739—Submitted July 22, 2020—Decided December 18, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-061.

_____

**Per Curiam.**

{¶ 1} Respondent, Michael Louis Bachman, of North Bend, Ohio, Attorney Registration No. 0017713, was admitted to the practice of law in Ohio in 1984. He served as chief magistrate of the Hamilton County Court of Common Pleas, General Division, from January 2007 until he resigned on September 10, 2018 (except for a brief period in 2013).

**{¶ 2}** In a December 5, 2019 complaint, relator, disciplinary counsel, alleged that Bachman engaged in judicial misconduct in conjunction with an incident involving a woman who had disrupted a trial in his courtroom by screaming in the hallway. Bachman left the bench to locate the woman, brought her into his courtroom, summarily held her in direct contempt of court, and when she protested his actions, increased her three-day jail sentence to ten days.

**{¶ 3}** Based on the parties' stipulations and evidence presented at a hearing before a panel of the Board of Professional Conduct, the board found that Bachman engaged in the charged misconduct and recommended that he be suspended from the practice of law for six months, fully stayed on conditions.

**{¶ 4}** We adopt the board's findings of misconduct but not the recommended sanction.

## Facts and Misconduct

**{¶ 5}** On September 4, 2018, Bachman was conducting an asset-forfeiture trial in his assigned courtroom on the fifth floor of the Hamilton County courthouse. On that day, K.J. entered the courthouse at approximately 7:45 a.m. with the intent to file a petition for a civil protection order. After she completed the necessary paperwork, an employee in the clerk of courts' office informed her that she had missed the 8:10 a.m. filing deadline for her petition to be heard that day and that she would have to return the following day. K.J. proceeded to Bachman's courtroom in the apparent hope of having her case heard that day. Video footage shows that in the hallway outside the courtroom, Bachman's courtroom clerk spoke with K.J. Their exchange lasted for approximately two minutes. Bachman's law clerk, who was watching the two on a video monitor, exited the courtroom and joined the brief exchange. The video shows that as the courtroom clerk turned away, K.J. was still talking, then the law clerk raised his hand and ended the conversation.

{¶ 6} At that point, K.J. turned away and walked down the hallway toward the exit, and Bachman's law clerk began to walk back toward the courtroom. K.J. then screamed so loudly that it was heard in the courtroom and captured on the audio system that was recording the proceedings. Bachman immediately said, "Okay, time-out" and stopped the trial. He then left the bench and exited the courtroom. At his disciplinary hearing, he testified that he stopped the trial because he could not hear a question asked of a witness.

{¶ 7} Seeing that K.J. was walking toward the exit, Bachman ordered her to stop and return to the courtroom. After running toward K.J. and catching up with her near a stairwell, Bachman once again ordered her to return to the courtroom. She complied and began to walk back to the courtroom with Bachman following her. When K.J. turned toward the main entrance of the courtroom, Bachman placed his hand between her neck and her shoulder and redirected her to a side entrance. With his hand still firmly between her neck and her shoulder, Bachman directed her into the courtroom and into the jury box.

{¶ 8} The following exchange then occurred:

[Bachman to K.J.]:  Have a seat right in that jury box, and don't move.

[Bachman to the clerk]:  Get the sheriff up here.

[K.J.]:  What? Why?

[Bachman]:  If you open your mouth one more time, you're adding on to your misery ma'am.

[K.J.]:  What—

[Bachman]:  Stop. Now—now—now, let me see who is here for my 8:30 cases.

{¶ 9} Bachman then began calling the names of the parties on his 8:30 a.m. docket. Shortly thereafter, deputies arrived. After asking K.J. to state her name, Bachman stated, "Deputies, she's in your custody for contempt of court for causing a ruckus which interrupted our hearing. Three days in jail."

{¶ 10} K.J. became upset, started crying, and yelled, "No! No!" Bachman stated, "Don't make it worse ma'am." After K.J. resisted the deputies and screamed several times, Bachman said, "Ten days." While the deputies wrestled with K.J., she yelled, "Why every time I come here to get help, you always send me to jail? You didn't even hear what it was that I had to say and now I got to go to jail for three days."[1] Bachman, replied, "Now it's ten, ma'am." As deputies dragged K.J. from the courtroom at Bachman's direction, Bachman addressed one of the deputies to congratulate him on an award that the deputy had received; according to Bachman, he was attempting to "inject some humanity" into the situation. Later that day, Bachman signed an order finding K.J. in direct contempt of court.

{¶ 11} Two days after the incident occurred, Judge Kim Burke, the administrative and presiding judge of the Hamilton County Court of Common Pleas, General Division, watched the video footage of the incident, issued an order mitigating the penalty, and ordered that K.J. be released from custody. Approximately four days later, Bachman was informed that the judges were aware of his conduct and that the general sentiment among them was that he should be let go. At his disciplinary hearing, Bachman testified that he submitted his resignation after being told that if he resigned, "this would be quiet and that would be it."

{¶ 12} The parties stipulated and the board found that Bachman's conduct violates Jud.Cond.R. 1.2 (requiring a judge at all times to act in a manner that promotes public confidence in the independence, integrity, and impartiality of the

---

1. K.J.'s statement referred to a contempt finding that Bachman issued against her in August 2017 for knocking a sign off the wall in the hallway outside the courtroom after Bachman denied her ex parte application for a civil protection order. At his disciplinary hearing, Bachman testified that he did not recall that incident at the time of the events at issue in this case.

judiciary and to avoid impropriety and the appearance of impropriety), 2.2 (requiring a judge to uphold and apply the law and perform all duties of judicial office fairly and impartially), and 2.8(B) (requiring a judge to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity). We adopt these findings of misconduct.

**Sanction**

{¶ 13} When imposing sanctions for attorney and judicial misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 14} The parties stipulated and the board found that five mitigating factors are present: Bachman did not have a prior disciplinary record, had not acted with a selfish or dishonest motive, had made full and free disclosure to the board or exhibited a cooperative attitude toward the proceedings, had presented evidence of his good character or reputation, and had had other sanctions imposed for his conduct—namely, the loss of his employment. *See* Gov.Bar R. V(13)(C)(1), (2), (4), (5), and (6). The parties stipulated and the board agreed that just one aggravating factor is present—the vulnerability of and resulting harm to the victim, K.J. *See* Gov.Bar R. V(13)(B)(8). We adopt these findings in part. We agree that Bachman did not have a prior disciplinary record, that he made a full and free disclosure to the board or exhibited a cooperative attitude toward the proceedings, had presented evidence of his good character and reputation, and had other sanctions imposed for his conduct. However, we disagree with the finding of the mitigating factor of absence of a dishonest or selfish motive in this case. We find this to be an aggravating factor in addition to refusal to acknowledge the wrongful nature of the misconduct. *See* Gov.Bar R. V(13)(B)(2) and (7).

**{¶ 15}** The board found that Bachman had demonstrated a clear lack of patience, dignity, and courtesy, created the impression that he was not impartial, and effectively undermined the public's confidence in the impartiality of the judiciary. The board also found that he failed to appreciate the inappropriateness of his actions. Although he testified that he regretted leaving the bench that day, he expressed no remorse for the harm that he had caused to K.J.—choosing instead to focus on the effects of his misconduct on his own career and finances.

**{¶ 16}** The board considered three cases in which we publicly reprimanded judges who, among other things, failed to comply with rules requiring them to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary. *See Disciplinary Counsel v. Oldfield*, 140 Ohio St.3d 123, 2014-Ohio-2963, 16 N.E.3d 581 (publicly reprimanding a judge who presided over 53 cases in which a public defender appeared as counsel while she was living in the judge's home and riding to the courthouse with the judge each day); *Disciplinary Counsel v. Medley*, 93 Ohio St.3d 474, 756 N.E.2d 104 (2001) (publicly reprimanding a judge who talked to a recently arrested person over the telephone, picked her up and drove her home, and later accepted that person's guilty plea in the resulting criminal case); *Disciplinary Counsel v. Mestemaker*, 78 Ohio St.3d 92, 676 N.E.2d 870 (1997) (publicly reprimanding a judge who made derogatory remarks regarding a litigant's national origin in one case, ordered marriage as a condition of probation in three other cases, and exhibited a lack of judicial temperament in several others).

**{¶ 17}** Although the board acknowledged that Bachman had engaged in a single, isolated instance of misconduct, it determined that his misconduct is more egregious than that in *Oldfield*, *Medley*, and *Mestemaker*. The board found that Bachman's misconduct is more in line with the misconduct at issue in three cases in which we imposed fully stayed six-month suspensions on judicial officers who had conducted ex parte and other improper proceedings in their courtrooms.

{¶ 18} In *Disciplinary Counsel v. Hoague*, 88 Ohio St.3d 321, 725 N.E.2d 1108 (2000), the judge misused the authority of his judicial office to summon to his courtroom the owner and the driver of a vehicle that he had personally observed being operated in a reckless manner. While the owner and the person who had been driving the vehicle sat at the defendant's table, the judge conducted an arrogant inquisition and reprimanded them from the bench. Having previously threatened them with criminal charges, he stated that he was going to report their driving habits to their employer. Hoague later wrote an open letter of apology that was published in a local newspaper and was ultimately convicted of a misdemeanor count of coercion. Upon finding that Hoague failed to act in a manner that promoted public confidence in the integrity and impartiality of the judiciary, we suspended him from the practice of law for six months but stayed the entire suspension on the condition that he engage in no further misconduct.

{¶ 19} In *Disciplinary Counsel v. Porzio*, 160 Ohio St.3d 77, 2020-Ohio-1569, 153 N.E.3d 70, we imposed the same sanction on a magistrate who, after conducting a hearing on petitions for civil stalking protection orders, excused one of the pro se parties and then engaged in a lengthy ex parte communication with the remaining party regarding the merits of the pending petitions. In addition to violating rules that required her to act in a manner that promotes public confidence in the judiciary and prohibiting ex parte communications, Porzio violated a rule requiring her to disqualify herself from any proceeding in which her impartiality might reasonably be questioned. Porzio had no prior disciplinary record, lacked a dishonest or selfish motive, exhibited a cooperative attitude toward the disciplinary proceedings, and lost her job as a result of her misconduct.

{¶ 20} And in *Disciplinary Counsel v. Elum*, 133 Ohio St.3d 500, 2012-Ohio-4700, 979 N.E.2d 289, a judge interceded in a probation matter that was within the province of the probation department, used vulgar and intemperate language while lecturing the probationer in his courtroom, and did so when neither

the probationer's counsel nor the prosecutor were present. He also unnecessarily injected himself into an internal police-department investigation related to a criminal case that was pending in his court and in an open courtroom, accused the police department of engaging in a coverup. We imposed a conditionally stayed six-month suspension on Elum for his misconduct, which included all three of the rule violations that Bachman has been found to have committed in this case.

{¶ 21} Based on these cases, the board recommends that we impose a sanction of a six-month suspension stayed in its entirety. However, we find that a stayed suspension is not commensurate with the judicial misconduct in this case. When a judicial officer's misconduct causes harm in the form of incarceration, that abuse of the public trust warrants an actual suspension from the practice of law.

{¶ 22} The primary purposes of judicial discipline are to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of the judiciary. *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 33. Sanctions serve as a deterrent to similar violations by judicial officers in the future, they notify the public of the self-regulating nature of the legal profession, and they build confidence in the legitimacy and integrity of the judiciary. *Disciplinary Counsel v. Horton*, 158 Ohio St.3d 76, 2019-Ohio-4139, 140 N.E.3d 561, ¶ 60.

{¶ 23} Judicial officers have inherent authority to summarily punish for direct contempt to secure the effective administration of justice and the dignity of the court. *See Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). And R.C. 2705.01 permits a judicial officer to summarily punish a person whose misbehavior in or near the courtroom "obstruct[s] the administration of justice." But in this case, the scream outside Bachman's courtroom can be characterized only as a distraction at best or a momentary interruption to the proceedings at worst. The only obstruction to the administration of justice that day occurred due to Bachman's misconduct.

8

{¶ 24} Bachman testified at his disciplinary hearing that the scream prevented him from being able to hear a question that was being asked of a witness. While the scream may have interrupted the trial occurring in Bachman's courtroom, it was a far cry from *obstructing* the trial. "Trial courts * * * must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown v. United States*, 356 U.S. 148, 153, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). "The record must demonstrate that the contemnor had an intent to obstruct the administration of justice or disobey an order of the court." *DeMoss v. Lappin*, 9th Dist. Summit Nos. 16428, 16566, 1994 Lexis 2622 (June 15, 1994). Because of the summary nature of punishment for a direct-contempt conviction, the obstruction must pose an imminent threat to the administration of justice; it is not even enough that the obstruction poses a likely or probable threat. *In re LoDico*, 5th Dist. Stark No. 2003-CA-00446, 2005-Ohio-172, ¶ 48, citing *In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972), and *Craig v. Harney*, 331 U.S. 367, 376, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947). There is nothing in the record to suggest that K.J. screamed to prevent Bachman from conducting the trial. Understandably, the scream likely frustrated or angered Bachman, but under no circumstances could the scream be viewed as rising to the level of obstructing the trial or presenting an imminent threat to the administration of justice. Bachman admitted as much at his disciplinary hearing. And when K.J. protested, asking why she was being thrown in jail and causing sheriff's deputies to physically subdue her and remove her from the jury box where Bachman had seated her, Bachman compounded his misconduct by more than tripling her jail sentence.

{¶ 25} This court has made clear that the power to punish for contempt is properly used to secure the dignity of the courts, not to demean and intimidate people. *Disciplinary Counsel v. Cox*, 113 Ohio St.3d 48, 2007-Ohio-979, 862 N.E.2d 514, ¶ 41. Abuse of this power " 'not only throws doubts on [the judicial officer's] impartiality, but also weakens the public's perception of the integrity of

the judiciary.' " *Id.*, quoting *Disciplinary Counsel v. Karto*, 94 Ohio St.3d 109, 114, 760 N.E.2d 412 (2002).

{¶ 26} In *Cox*, we imposed an indefinite suspension on a former judge for three counts of misconduct, one of which involved abuse of his power of contempt. Relative to that count, the judge ordered the arrest of a person who, upon learning that his nephew had to pay an additional $200 fee in his case before the judge, remarked to a court cashier that "judges can be crooks, too." *Id.* at ¶ 5. After the cashier reported the remark to the judge, the judge ordered the person's arrest and the person was held in custody for three hours. Because the judge's abuse of the contempt power seriously undermined the goals of strengthening public confidence in a fair and impartial judiciary, we imposed "an equally serious sanction * * * for the public's protection and as a deterrent to such subversive conduct in the future." *Id.* at ¶ 42.

{¶ 27} And in *Disciplinary Counsel v. Parker*, we imposed an 18-month suspension, with six months stayed, on a judge for multiple instances of misconduct, one of which involved jailing a gallery spectator for contempt without cause. 116 Ohio St.3d 64, 2007-Ohio-5635, 876 N.E.2d 556. The incident arose when the judge ordered a woman who was watching her daughter's probation-violation hearing to leave the courtroom because the woman had raised her hand. When she protested slightly, the judge told her to "just leave" and that he had "heard enough" out of her. *Id.* at ¶ 8. He then threatened to put her "in [her] daughter's place" if she did not leave. The woman started to leave the courtroom, muttering, "I can't believe this," but the judge called her back and found her in contempt of court. *Id.* The judge then sentenced her to 24 hours in jail. In our analysis of this abuse of judicial authority, we stated that "[t]he measured and even-handed administration of justice is central to our judicial system." *Id.* at ¶ 9. And with respect to this count of misconduct, we found that the judge had "stained the

integrity of that system with his intemperate, unreasonable, and vindictive decision to eject this spectator from the courtroom and jail her for contempt." *Id.*

{¶ 28} Despite the fact that *Cox* and *Parker* both involved multiple acts of judicial misconduct, the two cases are instructive regarding the appropriate sanction in this case because they both involved an abuse of the judicial power to punish for contempt that resulted in a person's incarceration.

{¶ 29} When determining a sanction for professional misconduct, injury caused by the misconduct is a factor that this court considers. *Elum*, 133 Ohio St.3d 500, 2012-Ohio-4700, 979 N.E.2d 289, at ¶ 20, citing *Disciplinary Counsel v. Campbell*, 126 Ohio St.3d 150, 2010-Ohio-3265, 931 N.E.2d 558, ¶ 53. K.J. did not testify at Bachman's disciplinary hearing, and there is nothing in the record to indicate why that was the case. However, the video footage of the incident is revealing and disturbing. It shows Bachman exiting the courtroom in his robe and running down the hallway in pursuit of K.J. He accosts her at the elevators and returns her to his courtroom. Once there, Bachman walks her through the crowded courtroom with his hand on her shoulder, places her in a seat in his jury box, and orders her not to move just before summoning the sheriff. Multiple sheriff's deputies soon arrive, and Bachman orders them to take K.J. into custody and to jail her for three days for contempt, causing her to cry and attempt to leave the jury box.

{¶ 30} The next 20 minutes of the video are difficult to watch. While K.J. resists being arrested and pleads with Bachman to explain why she is being jailed for three days, she is physically subdued by two deputies, threatened with being tased, and ultimately dragged from the jury box by several deputies. Bachman's only response is to increase her jail sentence to ten days. Not only is the chain of events set in motion by Bachman's misconduct physically and emotionally harmful to K.J., the incident exposed the sheriff's deputies and other court personnel to harm from a violent and unnecessary arrest on full display in front of a courtroom full of

people who have no other choice but to sit silently and witness such a disturbing sight. Bachman then congratulates a deputy on an award the deputy had recently received and resumes the proceeding as if nothing out of the ordinary has just transpired. Meanwhile, the video footage shows, while K.J. continues protesting her arrest, she is dragged, yanked, pinned to a wall, and handcuffed to a chair. Before the video ends, over 20 deputies and members of the court staff are involved in jailing K.J.—all because of a scream of frustration in the hallway that lasted one second.

{¶ 31} Although Bachman stipulated that K.J. was the victim of his misconduct and that she was vulnerable, the board found that Bachman's hearing testimony demonstrated his lack of understanding of the harm he had caused. The board report specifically states:

> [Bachman's] testimony demonstrated a lack of insight as to the inappropriateness of his actions. His biggest regret was leaving the bench that day. He did not show any remorse for the effects of the incident on [K.J.] but rather focused on the impact it had on his career and his resulting financial loss. He defended his action as being within the law rather than * * * an appropriate exercise of the contempt power.

Bachman's sentencing K.J. to ten days in jail for a one-second scream in the hallway as she was leaving his courtroom area and for questioning why she was being jailed is outrageous. The spectacle his conduct created was even more appalling and demonstrates his utter indifference to the harm he caused K.J. and the integrity of the judiciary.

{¶ 32} This court has made clear that judicial misconduct that abuses the public trust will result in "significant consequences." *Horton*, 158 Ohio St.3d 76,

2019-Ohio-4139, 140 N.E.3d 561, at ¶ 77. A fully stayed six-month suspension for Bachman's judicial misconduct is not a significant consequence. In a unanimous decision in *Horton*, this court imposed an *indefinite suspension from the practice of law* on a former judge who, while in office, sexually harassed members of his staff, created a hostile work environment, misused county resources to benefit his judicial campaign, and blamed his staff for causing his unethical behavior. Although we rightfully found that Horton's actions were inappropriate, unethical, and egregious based on the imbalance of power he had over his staff, the people who were subjected to his misconduct at least had some ability to extricate themselves from the abuse, imbalance of power notwithstanding. K.J. and others like her who have been improperly jailed did not have that ability.

{¶ 33} The power to summarily punish for direct contempt is not tempered by the rigors of due process. It is a prodigious power that is not to be invoked for actions that offend one's sensibilities or when a judicial officer feels personally affronted or disrespected. There are other, less severe, ways of handling disruptive courthouse conduct, ranging from a momentary pause (which would have averted this case) to ordering someone's departure from the courtroom or the courthouse. And with tremendous powers come tremendous responsibilities. The administrative and presiding judge of the Hamilton County Court of Common Pleas recognized this when she ordered K.J. released from jail.[2] Disciplinary cases involving an abuse of judicial power, particularly one depriving a person of his or her liberty, is a significant violation of the public trust. Even considering the

---

2. As a reminder, Prof.Cond.R. 8.3(a) requires an attorney to self-report his or her violations of the Rules of Professional Conduct that raise a question about the attorney's honesty, trustworthiness, or fitness to practice law. *Cleveland Metro. Bar Assn. v. McElroy*, 140 Ohio St.3d 391, 2014-Ohio-3774, 18 N.E.3d 1191, ¶ 14. And Prof.Cond.R. 8.3(b) requires attorneys to report any ethical violation by a judicial officer. *See generally* Greenbaum, *The Attorney's Duty to Report Professional Misconduct: A Roadmap for Reform*, 16 Geo.J. Legal Ethics 259 (2003). This incident occurred in September 2018, but the disciplinary complaint against Bachman was not filed until December 2019. It is unclear from the record how Bachman's misconduct was reported.

mitigating factors present in Bachman's case and that as a result of his misconduct he resigned his position, a fully stayed six-month suspension is not a sanction commensurate with his misconduct.

{¶ 34} We recognize the many circumstances under which trial-court judges and magistrates can become exasperated with the courthouse conduct of parties, lawyers, and the public. Judicial officers are human beings with the full range of human emotions. But when lawyers become judicial officers, they are held to an additional—and a higher—standard of conduct. *See* Jud.Cond.R., Preamble [3]. This is particularly so because of the many ways in which a judicial officer can deprive a person of property and, more importantly, of liberty.

{¶ 35} Sending someone to jail is not the adult equivalent to sending a child to his or her room for a time-out. Yet Bachman and other judicial officers who have been sanctioned for similar conduct seem to equate the two. Not only was Bachman's jailing of K.J. unauthorized under the contempt statute, but he exhibited a total disregard for the reason she was at the courthouse in the first place—to get a civil protection order. He also showed a complete indifference to the circumstances of her life (e.g., whether she had children or other family members to care for, employment she might lose, or any other harm she could suffer), to the indignity she endured by being physically restrained in a crowded courtroom, and ultimately, to the loss of her liberty.

{¶ 36} In indefinitely suspending the former judge in *Horton*, we stated that "[w]e will protect the public by sending a strong message to members of the judiciary that abusing the trust of public employees and the public at large will result in significant consequences." 158 Ohio St.3d 76, 2019-Ohio-4139, 140 N.E.3d 561, at ¶ 77. Thus, a sanction more severe than a fully stayed six-month suspension not only is compelled by Bachman's misconduct and the aggravating factors present in this case but is also necessary to send a strong message to

members of the judiciary, to deter similar violations in the future, and to make crystal clear to the public that this type of judicial misconduct will not be tolerated.

## Conclusion

{¶ 37} Accordingly, Michael Louis Bachman is suspended from the practice of law for six months. Costs are taxed to Bachman.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

FISCHER, J., not participating.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Adam P. Bessler, Assistant Disciplinary Counsel, for relator.

Reminger Co., L.P.A., Joseph W. Borchelt, and Ian D. Mitchell, for respondent.

_____