**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Repp*, **Slip Opinion No. 2021-Ohio-3923.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3923

DISCIPLINARY COUNSEL *v.* REPP.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Repp*, Slip Opinion No. 2021-Ohio-3923.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Code of Judicial Conduct—One-year suspension from the practice of law and from judicial office without pay.*

(No. 2021-0757—Submitted July 13, 2021—Decided November 9, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-070.

_____

**Per Curiam.**

{¶ 1} Respondent, Judge Mark Edward Repp, of Tiffin, Ohio, Attorney Registration No. 0058853, was admitted to the practice of law in Ohio in 1992. He was first elected judge of the Tiffin Municipal Court in Seneca County in 2002. In 2013, the Tiffin Municipal Court was combined with the Fostoria Municipal Court

to create the Tiffin-Fostoria Municipal Court. Repp has served as the sole judge of that court since that time.

{¶ 2} In a December 2020 complaint, relator, disciplinary counsel, alleged that Repp committed four ethical violations arising from (1) his undignified, improper, and discourteous demeanor toward a criminal defendant and the defendant's girlfriend in his courtroom, (2) his decision to order the defendant's girlfriend, who was quietly observing the proceedings in his courtroom, to submit to a drug test, and (3) his order finding her in direct contempt of court and sentencing her to ten days in jail for her refusal to submit to a drug test.

{¶ 3} The parties submitted comprehensive stipulations of fact and misconduct and 45 stipulated exhibits. After a hearing, a three-member panel of the Board of Professional Conduct found that Repp had committed the charged misconduct and recommended that he be suspended from the practice of law for one year, with six months of the suspension stayed on the condition that he engage in no further misconduct. The board adopted the findings of fact and conclusions of law of the hearing panel but recommended that Repp be suspended from the practice of law for one year with no stay of the suspension, that he be immediately suspended from judicial office without pay for the duration of his disciplinary suspension, and that he be ordered to pay the costs of these proceedings. The parties jointly waived their right to object to the board's report.

{¶ 4} Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 5} On March 11, 2020, A.O. left her two young daughters in the car with their grandmother and entered Repp's courtroom to observe the arraignment and probation-violation hearing of the girls' father, T.D. T.D. had been arrested the previous day on a bench warrant for violating the terms of his probation by failing to appear at a county drug-court program, called Participating in Victory of

Transition ("PIVOT"). He was also charged with several other offenses, including driving under suspension. A.O. sat in the back row of Repp's courtroom and waited quietly for T.D.'s case to be called.

{¶ 6} Repp addressed A.O. from the bench on several occasions, and the video recording of the proceedings does not show that A.O. brought any attention to herself. During the proceedings in an unrelated case, Repp stated, "Going to be lots of drug tests today. Is that [T.D.'s] girlfriend back there? I don't know. I thought maybe it was." After the defendant in that case stated that he did not believe in using drugs, Repp stated, "That's good. I wish all of us could say that. Right, [A.O.]?" A.O. did not respond to Repp's comments.

{¶ 7} Before calling the next case, Repp stated, "Oh, before we get started, I think [A.O.'s] under the influence. I want her drug tested." A.O. did not have a case pending before Repp at that time, was not on probation, and had never been charged with or convicted of a drug-related offense. Moreover, she had made no disturbance in the courtroom.

{¶ 8} The bailiff directed A.O. to follow him out of the courtroom to the probation department so that the drug test could be administered. A.O. complied, and while she waited to be tested, she texted T.D.'s mother, who was still watching A.O.'s daughters. She told T.D.'s mother that she was afraid to leave the courthouse because she thought that Repp would issue a warrant for her arrest. She also texted her sister and asked her to come get her daughters because T.D.'s mother had to go to work.

{¶ 9} When A.O.'s sister arrived at the probation office, the probation officer told her that A.O. could not leave the courthouse until she took a drug test. And when A.O. requested a lawyer, she was told that she was not eligible for court-appointed counsel because she had not been charged with a crime. When A.O. said that she would not take a drug test, the probation officer stated that A.O. would go back in front of Repp after he was done with lunch.

{¶ 10} Approximately ten minutes after A.O. had left the courtroom, Repp called T.D.'s case. T.D. appeared by video from the Seneca County jail. Repp greeted him by stating, "Hold it. Hold it. Who's that vision? That vision of a man I haven't seen in so long? Ho, just getting by, doing his own thing. Holy Smokes. How you doing. [T.D.]? How you been?" T.D. replied, "You know, not too bad. Just going to work, coming home, going to work, coming home and slipped up and got caught, you know." Repp responded, "Slipped up and got caught. Yeah, baby. Slipped up and got caught."

{¶ 11} The prosecutor recited the charges and T.D. entered a no-contest plea. After accepting T.D.'s plea, Repp stated that he had been looking for T.D. in the PIVOT program and then asked T.D. whether he or A.O. had recently overdosed. At the time, Repp did not possess any verified evidence that T.D. or A.O. had recently overdosed. After reading the police report, which indicated that A.O. was in the car with T.D. at the time of his arrest, Repp stated, "Wow. [A.O.'s] down here. She's probably going to go to jail too. Who's watching the kids? [T.D.]?" When T.D. stated that his dad was probably taking care of the children, Repp laughed and said, "Your dad. I heard your dad went to jail for you, too; is that right?" T.D. replied that he was not sure, and Repp said, "Yes, he did," although he had no verified evidence to support that statement.

{¶ 12} Repp sentenced T.D. to a 180-day jail term for one case, and a 30-day jail term for a second case. Repp ordered the jail terms to be served concurrently. The prosecutor recommended an additional 150-day jail sentence for T.D.'s probation violations. When T.D. asked whether the 150-day jail term would be concurrent with his 180-day jail term, Repp replied, "Uh, what do you think, [T.D.]? Am I giving two for one today? I don't think so. I hate to saddle the Seneca County Jail with you, but, [T.D.], you've been so, you know, defiant about this and haven't followed through with a thing. I'm trying to help you out. I know

4

you overdosed since then. I'm giving you the 150 days. That's consecutive * * * not concurrent. Good luck."

{¶ 13} After lunch, the probation officer took A.O. back into the courtroom and informed Repp that A.O. had refused to take a drug test. When Repp asked why, A.O. stated that she did not want to take the test, because she did not think she had done anything to be in trouble. Repp stated, "Okay. Well, you come into my courtroom, I think you're high, you're in trouble." A.O. replied, "Okay. I'm not, though." Repp then asked A.O. whether she wanted to take the drug test, and when she stated that she did not, he said: "Can I have a journal entry. We're going to hold you in contempt. I'm going to submit and commit you for ten days. When you decide you want to take a test, then I'll, then we'll talk about this again. All right?" A.O. replied, "Okay." Repp stated, "Is there anything else? Remand to custody. You have the keys, [A.O.]"

{¶ 14} Repp issued a judgment entry finding A.O. in direct contempt of court and sentencing her to the Seneca County jail for ten days or until she submitted to a drug test. That entry, however, did not specify the conduct that led to his finding her in contempt. A.O. was immediately remanded to the custody of the Seneca County sheriff, handcuffed, and transported to the county jail.

{¶ 15} At the jail, A.O. experienced several indignities. She was required to take a pregnancy test and undergo two full-body scans. The female officer who conducted the scans allegedly detected anomalies that she believed could have been contraband inside A.O.'s body. A more senior officer, who was a male, was called to review A.O.'s body scan. Although the female officer attempted to cover A.O.'s breast and genital areas on the screen while the male officer reviewed the scan, the male officer told the female officer that that was unnecessary, and then the male officer asked A.O. whether she had pierced nipples. A.O. did not respond. She was then handcuffed and transported to Tiffin Mercy Hospital where she was required to submit to a second pregnancy test and either a CT scan or an MRI scan.

No contraband was found, and she was returned to the jail. The parties stipulated that if A.O. had testified at Repp's disciplinary hearing, she would have stated that all these events made her feel uncomfortable.

{¶ 16} After A.O. returned to the jail, she and T.D. saw each other in passing. A few hours later, A.O. became scared and worried about her children and told a correctional officer that she was willing to take the drug test because she wanted to go home. The officer replied that A.O. was not allowed to take the test and that she already "had her chance." Repp stipulated that if A.O. had been called to testify at his disciplinary hearing, she would have stated that she became even more upset after speaking to the correctional officer, believing that she may have to spend ten days in jail.

{¶ 17} On the evening of her arrest, A.O. retained attorney Dean Henry to represent her. The next morning, Henry filed a notice of appeal and a motion requesting that A.O.'s sentence be stayed pending the outcome of her appeal in the Tiffin-Fostoria Municipal Court. He also filed a petition for a writ of habeas corpus with the Seneca County Court of Common Pleas—though for reasons not explained in the record, the petition was never docketed.

{¶ 18} Repp set a hearing on A.O.'s motion requesting that her sentence be stayed for later that same day. Before that hearing, Repp met in his chambers with Henry, Seneca County Prosecuting Attorney Derek DeVine, and Seneca County Common Pleas Court Judge Michael Kelbley. DeVine stated that he was unaware of any legal authority allowing a judge to hold a spectator in contempt for refusing to take a drug test. Repp offered no legal authority to support his conduct in finding A.O. in contempt of court but maintained that he had a right to control his courtroom.

{¶ 19} Later that day, during the hearing on A.O.'s motion, DeVine moved to vacate Repp's contempt finding on the grounds that (1) it was not supported by law and (2) it violated the United States and Ohio Constitutions. Henry concurred.

Repp agreed to vacate his contempt finding on the condition that A.O. agree to submit to a drug-treatment assessment; however, he no longer had jurisdiction due the pendency of A.O.'s appeal. *See In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9 (once an appeal is perfected, the trial court "retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from"). After that hearing, A.O. was released from jail.

{¶ 20} On September 21, 2020, the Third District Court of Appeals reversed Repp's judgment finding A.O. in contempt and remanded the cause. The court of appeals found the record to be "devoid of any specific observations or findings by [Repp] of [A.O.'s] conduct in the courtroom supporting his stated belief that she was under the influence while observing court proceedings." *State v.* [*A.O.*], 3d Dist. Seneca No. 13-20-05, 2020-Ohio-4514, ¶ 29. The court of appeals further found that Repp "was without the authority compel A.O. to submit to a drug test" and that his "command compelling her to submit to a drug test was improper." *Id*. The court of appeals therefore concluded that Repp's finding that A.O. was in direct contempt of court "was without cause and constituted an invalid exercise of his contempt power under R.C. 2705.02(A)." *Id*. On remand, Repp dismissed the case.

{¶ 21} Based upon these facts, the parties stipulated and the board found that Repp's conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary), 2.2 (requiring a judge to uphold and apply the law and to perform all duties of judicial office fairly and impartially), and 2.8(B) (requiring a judge to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity). We adopt these findings of misconduct.

**Sanction**

{¶ 22} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 23} The board found that three aggravating factors were present—Repp acted with a selfish or dishonest motive, he committed multiple offenses, and he caused harm to two vulnerable victims. *See* Gov.Bar R. V(13)(B)(2), (4), and (8). The board specifically rejected Repp's testimony that his misconduct was motivated by a desire to help A.O. Instead, it found that the audio and video recordings of Repp's in-court statements to A.O. and T.D. exhibited arrogance and a desire to prove that his suspicions about A.O.'s impairment were accurate and consistent with unsubstantiated rumors that he had heard about her and T.D.'s past drug use. In addition, the board found that Repp's hearing testimony demonstrated that he was very frustrated with T.D. and that he had channeled that frustration toward A.O.

{¶ 24} As for mitigating factors, the board found that Repp did not have a prior disciplinary record and that he had made full and free disclosure to the board and had exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1) and (4). It also attributed some mitigating effect to six letters (two from attorneys, one from a former justice of this court, and three from community members) attesting to Repp's good character and reputation. Most of the authors praised Repp's involvement in PIVOT; however, it does not appear that the authors were informed of the nature of Repp's professional misconduct. *See* Gov.Bar R. V(13)(C)(5).

{¶ 25} In determining the appropriate sanction for Repp's misconduct, the board found that *Disciplinary Counsel v. Bachman*, 163 Ohio St.3d 195, 2020-Ohio-6732, 168 N.E.3d 1178, was most instructive.

{¶ 26} Bachman, who was the chief magistrate of the Hamilton County Court of Common Pleas, General Division, stopped a hearing and left the bench to locate a woman whose momentary scream in the hallway was audible in his courtroom. Bachman caught up with the woman, escorted her to his courtroom, summarily held her in direct contempt of court, and sentenced her to three days in jail. When she objected to his actions, he increased the sanction to ten days. Consistent with the parties' stipulations, we found that Bachman violated Jud.Cond.R. 1.2, 2.2, and 2.8(B).

{¶ 27} We adopted four of the mitigating factors that had been stipulated to by the parties, finding that Bachman had no prior discipline, made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, presented evidence of his good character and reputation, and had other sanctions imposed for his conduct—namely the loss of his employment. As in this case, in *Bachman*, we rejected the parties' stipulation that the judge had acted without a selfish or dishonest motive and instead found that the judge acted *with* a selfish or dishonest motive and considered that as an aggravating factor. In addition to the parties' stipulation that Bachman had caused harm to a vulnerable victim, we also found that his failure to acknowledge the wrongful nature of his misconduct constituted a third aggravating factor.

{¶ 28} In *Bachman*, we noted that judicial officers have the inherent authority to summarily punish a person for direct contempt to secure the effective administration of justice and the dignity of the court, *see id.*, 163 Ohio St.3d 195, 2020-Ohio-6732, 168 N.E.3d 1178, at ¶ 23, citing *Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). We also acknowledged that R.C. 2705.01 permits a judicial officer to summarily punish misbehavior in or near the courtroom that " 'obstruct[s] the administration of justice.' " *Id.*, quoting R.C. 2705.01. But we found that the scream outside Bachman's courtroom could be characterized only "as a distraction at best or a momentary interruption to the

proceedings at worst" and that the only conduct that rose to the level of obstructing the administration of justice that day was Bachman's. *Id.* We emphasized that "the power to punish for contempt is properly used to secure the dignity of the courts, not to demean and intimidate people," and that abusing that power serves to cast doubt on the judicial officer's impartiality and to weaken public perception of the integrity of the judiciary. *Id.* at ¶ 25, citing *Disciplinary Counsel v. Cox*, 113 Ohio St.3d 48, 2007-Ohio-979, 862 N.E.2d 514, ¶ 41; and *Disciplinary Counsel v. Karto*, 94 Ohio St.3d 109, 114, 760 N.E.2d 412 (2002).

{¶ 29} Recognizing that an abuse of judicial power that deprives a person of his or her liberty is a significant violation of the public trust, we rejected the board's recommendation of a fully stayed six-month suspension and suspended Bachman from the practice of law for six months "to make crystal clear to the public that this type of judicial misconduct will not be tolerated." *Id.* at ¶ 33, 36.

{¶ 30} In this case, the board found that in contrast to the victim in *Bachman*, who briefly interrupted a court proceeding, A.O. did *absolutely nothing* to justify Repp's attention in the courtroom—let alone his order that she be drug tested. In addition to violating Jud.Cond.R. 1.2, 2.2, and 2.8(B), as Bachman did, Repp has admitted that his conduct violated Prof.Cond.R. 8.4(d). Repp's undignified, improper, and discourteous demeanor had been directed at *two* victims—A.O. and T.D—as opposed to Bachman's single victim. In addition, A.O. suffered great personal indignities and emotional distress as the result of the security and medical screenings she had to endure during her incarceration, on top of the anxiety regarding the care and well-being of her two young children. Furthermore, Bachman had a significant mitigating factor that was not present in this case—namely that Bachman had other sanctions imposed for his misconduct by virtue of the loss of his employment.

{¶ 31} In contrast to the judge in *Bachman*, 163 Ohio St.3d 195, 2020-Ohio-6732, 168 N.E.3d 1178, Repp acknowledged the wrongful nature of his

misconduct. But the board noted that his expressions of remorse and acceptance of responsibility were tempered by other statements that he made to the board and by his overall demeanor. Specifically, the board noted that at one point during his testimony, Repp stated that he had "tried" to accept responsibility for his misconduct—which suggested that he had not completely done so. Therefore, the board did not give this distinction from *Bachman* much weight.

{¶ 32} On these facts, the board determined that Repp's conduct was substantially more egregious than the conduct at issue in *Bachman* and recommends that Repp be suspended from the practice of law for one year with no stay. We agree with the board's assessment and conclude that a one-year suspension with no stay will best protect the public and send a strong message to the judiciary that this type of judicial misconduct will not be tolerated.

### Conclusion

{¶ 33} Accordingly, Mark Edward Repp is suspended from the practice of law in Ohio for one year. Pursuant to Gov.Jud.R. III(7)(A), he is immediately suspended from judicial office without pay for the duration of his disciplinary suspension. Costs are taxed to Repp.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond and Audrey E. Varwig, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., George D. Jonson, and Lisa M. Zaring, for respondent.

_____