NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0399n.06

Case No. 23-3034

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ALEXZANDRIA H. ORTA, | ) | **FILED**<br>Sep 01, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| MARK E. REPP, Judge of the Tiffin-Fostoria Municipal Court, et al., | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |
| | ) | |

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

SUTTON, Chief Judge. Municipal Judge Mark Repp ordered Alexzandria Orta, a spectator in his courtroom to a proceeding involving her boyfriend, to submit to a drug test. When she refused, Judge Repp held her in contempt of court and sent her to jail. Orta sued Judge Repp for violating her constitutional rights. The district court determined that Repp possessed absolute judicial immunity. We agree and affirm.

I.

On March 11, 2020, Orta sat in the back row of the public gallery at the Tiffin-Fostoria Municipal Court, waiting for her boyfriend's case to be called. Judge Repp presided over the case. Orta had attended her boyfriend's previous hearings and, like her boyfriend, was no stranger to Judge Repp's courtroom, and he recognized her from the bench. Although Orta did not have a

criminal record and had not been a defendant in Judge Repp's court, he suspected that Orta misused drugs. At various times that morning, Judge Repp made intemperate remarks about Orta's supposed drug use. Just before her boyfriend's case began, Judge Repp declared, "Oh, before we get started, I think Alexzandria's under the influence." R.14 at 5. Committed to confirming his suspicion, Judge Repp ordered bailiffs to escort Orta from the courtroom to take a drug test. Repp later admitted that he had not observed signs of drug use from Orta. But he claimed that he had acted out of concern for her wellbeing.

Orta refused to submit to the testing. She discovered law enforcement had received instructions to prevent her from leaving the building, and courthouse staff would not allow her to contact a lawyer. The bailiffs brought Orta back before Judge Repp that afternoon, and Judge Repp held Orta in contempt of court for refusing to take the drug test. He sentenced her to remain in jail for ten days or until she submitted to a drug test. After arriving at the jail, a frightened Orta agreed to take the drug test, but a sheriff's deputy told her that she had missed her chance. She stayed at the jail until the next day, when the county prosecutor convinced Judge Repp that he could not detain her on these grounds.

An appeals court overturned Judge Repp's contempt finding, holding such a finding to be a denial of Orta's due process rights and an abuse of discretion. *State v. Orta*, No. 13-20-05, 2020 WL 5627173, at *5–7 (Ohio Ct. App. Sept. 21, 2020). The Ohio Supreme Court then suspended Judge Repp's law license and removed him from his judicial post based on his judicial misconduct toward Orta. *Disciplinary Couns. v. Repp*, 180 N.E.3d 1128, 1134 (Ohio 2021) (per curiam). After serving his suspension, Judge Repp attempted but failed to regain his elected position as a judge. *See* TIFFINOHIO.NET, *Rhonda Best defeats Mark Repp in GOP primary for Tiffin-Fostoria Municipal Court*, https://tinyurl.com/yc8amyc4 (May 2, 2023).

Orta sued Judge Repp, the Tiffin-Fostoria Municipal Court, and the Seneca County Sherriff for infringing her constitutional rights under 42 U.S.C. § 1983 and for committing state-law torts. Judge Repp asserted absolute judicial immunity. The district court agreed and dismissed the claims against him. But it permitted Orta to file an immediate appeal under Civil Rule 54(b). Orta appealed only her § 1983 claim.

## II.

Judges generally receive broad immunity from suit. *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019). Because judicial immunity played a well understood role as a safeguard of "judicial independence" when Congress passed what is now § 1983, *Bradley v. Fisher*, 80 U.S. 335, 348 (1871), that law does not ordinarily permit a plaintiff to sue a judge for damages, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The rule comes with two exceptions. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam). The first: judicial immunity does not extend to judges when they perform non-judicial actions. *Id.* at 11. The nature of the judge's act and its context reveal whether the judge was undertaking judicial action or was engaged in other functions, such as performing administrative work or resolving purely personal matters. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999).

The second: judicial immunity does not apply when a judge performs judicial acts "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. As long as a judge has "some" subject matter jurisdiction over the activity at issue, he may still claim immunity. *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997). Two examples illustrate this principle. Consider a probate court judge who imposes a criminal sentence beyond the statutory maximum. *See Bradley*, 80 U.S. at 352. Because that judge had jurisdiction over wills and estates, not criminal defendants, he acted without any jurisdiction in imposing the sentence and may not claim

3

immunity for it. *Id.* Now consider a criminal court judge who misinterprets a criminal law and imposes a sentence beyond the maximum authorized penalty. *See id.* That judge exceeded his authority, but he still possessed the underlying jurisdiction to sentence the defendant, creating immunity. *Id.*

Judge Repp enjoys judicial immunity unless one of those two exceptions applies. Neither does. Judge Repp performed a traditional judicial act when he presided over Orta's boyfriend's probation-violation and driving-infraction proceedings in his courtroom. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994). So too for holding Orta in contempt and sentencing her to jail. *DePiero*, 180 F.3d at 784; *see King v. Love*, 766 F.2d 962, 968 (6th Cir. 1985). After all, the Ohio Supreme Court sanctioned Judge Repp for his "judicial misconduct." *Repp*, 180 N.E.3d at 1134. By entering a courtroom to watch judicial proceedings, moreover, Orta understood that she would be dealing with Judge Repp in his judicial capacity, as opposed to encountering him elsewhere in the courthouse while on a personal errand. *See Brookings v. Clunk*, 389 F.3d 614, 622–23 (6th Cir. 2004).

Judge Repp also did not act in the complete absence of jurisdiction when he held Orta in contempt. As a judicial officer for the Tiffin-Fostoria Municipal Court, Judge Repp possessed statutory authority to hold someone in contempt for misbehavior in his presence or for disobeying a lawful court order outside of his presence. Ohio Rev. Code §§ 1901.13(A)(1) (1988), 2705.01 (1953), 2705.02 (2001); *cf.* Barnes, 105 F.3d at 1122–23.

Orta disagrees. She emphasizes the nature of Judge Repp's actions—that he acted "out of his paranoid, selfish desire to prove himself right" about her drug use—claiming these motives remove the cloak of immunity. Appellant's Br. 26. She argues that the Fifth Circuit has sometimes considered the rationales driving a contempt charge in evaluating judicial acts, *see Harper v.*

*Merckle*, 638 F.2d 848, 859 (5th Cir. 1981), but judicial immunity generally does not hinge on a judge's motives. Else, judges would face "vexatious litigation" about their true intentions on the strength of allegations that "could always be made." *Bradley*, 80 U.S. at 354. Even if Judge Repp targeted Orta from a selfish or "evil motive," moreover, he still performed a judicial act when he held her in contempt for refusing the drug test. *Brookings*, 389 F.3d at 622.

Orta adds that Judge Repp lacked jurisdiction to hold her in contempt. She says that Judge Repp did not satisfy the statutory requirements for holding her in contempt, including filing a written charge, making a journal entry, and providing her with an opportunity to be heard. *See* Ohio Rev. Code § 2705.03 (1953). But judicial immunity would all but vanish if mistakes in interpreting a judge's authority exposed him to liability. *See Norfleet*, 924 F.3d at 319. A judge who misreads a statutory provision or commits procedural errors acts "in excess of his authority," not without it. *Stump*, 435 U.S. at 356, 359. After all, the only reason Judge Repp had to follow these statutory process requirements was because Ohio had already granted him jurisdiction to hold a person in contempt. Judge Repp's alleged failure to abide by these statutory requirements may show that he erred, perhaps egregiously, but the "erroneous manner" in which Judge Repp exercised jurisdiction does not detract from the fact that he exercised jurisdiction. *Id.* at 359 (quoting *Bradley*, 80 U.S. at 357); *cf. DePiero*, 180 F.3d at 785; *Johnson v. Turner*, 125 F.3d 324, 335 (6th Cir. 1997). For example, in *Sevier v. Turner*, we affirmed a judge's exercise of the contempt power when the judge was generally "empowered" to handle cases over which he "normally has jurisdiction to hear" because the judge "did not act in the clear absence of all jurisdiction." 742 F.2d 262, 271 (6th Cir. 1984).

But if Judge Repp receives judicial immunity, Orta asks, what is to stop him from plucking a spectator from the gallery and, say, convicting him of a crime he did not commit? Judicial

immunity may provide a broad shield, but it "does not protect a judge performing the purely prosecutorial functions involved in initiating criminal prosecutions." *Barnes*, 105 F.3d at 1118. Judges do not perform judicial acts when they begin criminal proceedings against courthouse bystanders and convict them after "highly irregular proceedings." *Id.* at 1119. Even if judges possess jurisdiction over ongoing criminal proceedings, moreover, responsibility for initiating those cases ordinarily belongs to the prosecutor. *See id.* at 1119, 1122–23; *cf. Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000). Contempt provides an unusual exception to the rule against judges creating their own criminal jurisdiction because it plays an "integral part of the judicial process" and responds to matters and individuals already before the court. *Johnson*, 125 F.3d at 335; *Brookings*, 389 F.3d at 623.

Even with immunity, moreover, Judge Repp cannot escape the consequences of his actions. Judge Repp, as shown, learned the hard way that violating judicial ethics exposes a judge to serious professional and reputational consequences. *See Repp*, 180 N.E.3d at 1134. And the voters of Tiffin, Ohio, showed that they would not permit a judge who abused his authority to remain on the bench. These professional penalties may not provide full comfort or vindication to Orta. *See Bradley*, 80 U.S. at 350, 354. But she and the rest of society benefit when judges can decide the law "without apprehension of personal consequences," even if "unfairness and injustice . . . may result on occasion." *Mireles*, 502 U.S. at 10.

Orta closes by asking us to hold Judge Repp liable under Ohio law, which allegedly abrogates absolute judicial immunity. We are doubtful of that claim. *See State ex rel. Fisher v. Burkhardt*, 610 N.E.2d 999, 1001 (Ohio 1993). But Orta did not appeal her state tort claims, and she thus forfeited those claims.

6

Orta also sought injunctive and declaratory relief, which judicial immunity does not bar. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). But she lacks standing to seek these forms of prospective relief because Judge Repp cannot abuse a position he no longer holds. *See Johnson*, 125 F.3d at 336–39; *cf. McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996–97 (6th Cir. 2019). Section 1983 at any rate generally does not permit plaintiffs to seek injunctions against judges acting in their judicial capacity. *Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012).

In conclusion, we agree with the district court that Judge Repp's "actions are inexcusable" and emphasize that we "in no way condone the actions that led [Orta] to file this lawsuit." R.33 at 14. But we nevertheless agree that he receives absolute judicial immunity for this misconduct.

We affirm.